Cheryl FORREST and Sam
Forrest, Appellants,

v.

Guy O. DANIELSON, III, M.D., David B.
Kerns, M.D., Silas E. Duncan, M.D.,
and Trinity–Mother Frances Health
System a/k/a Mother Frances Hospital
Regional Health Care Center, Appellees.

No. 12–00–00363–CV.

Court of Appeals of Texas,
Tyler.

March 28, 2002.

Paul D. Rich, Rich & Alonzo, PC, Dallas, for appellants.

Joel J. Steed, Law Office of Joel J. Steed, P.C., Ken W. Good, Dallas, Terri S. Harris, Riley & Harris, L.L.P., Houston, James B. Ewbank, II, Ewbank & Byrom, P.C., Austin, for appellees.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

SAM GRIFFITH, Justice.

Cheryl Forrest and Sam Forrest ("the Forrests") appeal the trial court's final order dated November 6, 2000, granting motions for dismissal in favor of Guy Danielson, III, M.D., David Kerns, M.D., Silas E. Duncan, M.D., and Trinity–Mother Frances Health System a/k/a Mother Frances Hospital Regional Health Care Center, pursuant to the Medical Liability

and Insurance Improvement Act ("the Act").[1] The Forrests raise two issues on appeal. We affirm.

## BACKGROUND

Cheryl Forrest underwent surgery on November 12, 1996. The surgery was to remove a disc protrusion in her back and involved a three-level fusion. A pedicle screw and rod system was implanted in her back. Soon thereafter, complications arose. Mrs. Forrest's condition worsened, allegedly because of the pedicle screw and rod system and its installation. The pedicle screw and rod system was removed from her body in March 1997.

On November 12, 1998, the Forrests filed suit against the manufacturer and distributor of the pedicle screw and rod system for defective medical products. On November 12, 1998, the Forrests sent notification letters to the medical providers, Guy Danielson, III, M.D., David Kerns, M.D., Silas E. Duncan, M.D., and Trinity–Mother Frances Health System. On January 25, 1999, the Forrests filed suit against the medical providers.

On April 28, 1999, the Forrests filed an expert report prepared by Dr. Robert A. Callewart, M.D. On May 5, 1999, Dr. Duncan and Dr. Kerns filed a motion to compel compliance with article 4590i, section 13.01 of the Act, alleging the Forrests' expert report was inadequate because it failed to name each defendant and asserting that the Forrests must file a separate report as to each provider. On June 18, 1999, the Forrests filed an amended expert report identifying each doctor individually, but still not referencing the hospital. Thereafter, the defendants were granted summary judgment on the basis that the Forrests' lawsuit was barred by limitations. This court reversed and remanded

that judgment on January 31, 2000. *See Cheryl Forrest and Sam Forrest v. Guy O. Danielson, III, M.D., J. Stewart Crutchfield, M.D., David B. Kerns, M.D., Silas E. Duncan, M.D., G. Peter Foox, M.D., and Trinity–Mother Frances Health Sys.*, 2000 WL 135835, No. 12–99–00256–CV, 2000 Tex.App. LEXIS 1003 (Tyler Jan. 31, 2000, no pet.) (not designated for publication).

On March 31, 2000, Dr. Danielson filed a motion to dismiss under article 4590i, section 13.01(d) of the Act, alleging the Forrests' expert report failed to comply with the statutory requirements. On June 29, 2000, a hearing was held on that motion and all other remaining defendants filed motions to dismiss on the same ground. Dr. Danielson's motion was granted and the case against him dismissed on July 3, 2000. On August 2, 2000, the Forrests filed a motion for new trial and a motion pursuant to section 13.01(g) requesting an additional thirty days to file another amended report. The next day, a hearing was held on the remaining defendants' motions to dismiss. On November 6, 2000, the court signed the Final Order of Dismissal, Nunc Pro Tunc, Denial of Motion for New Trial and Denial of Motion Pursuant to 13.01(g), article 4590(i). The Forrests thereafter appealed, raising two issues.

## APPLICABLE LAW

This medical malpractice case is governed by the Medical Liability and Insurance Improvement Act. The Act states that a claimant shall, not later than the ninetieth day after the date the claim is filed, do one of three things, either file a $5,000 cost bond for each physician or health care provider named by the claimant in the action, place in an escrow account $5,000 cash for each physician or

---

1. Tex.Rev.Civ. Stat. Ann. art. 4590i (Vernon Supp.2002).

health care provider named by the claimant in the action, or "file an expert report for each physician or health care provider with respect to whom a cost bond has not been filed and cash in lieu of the bond has not been deposited...." TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(a).

Further, within 180 days of the filing of the health care liability claim, a claimant must, for each physician or health care provider against whom a claim is asserted, "furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report" or "voluntarily nonsuit the action against the physician or health care provider." *Id.* § 13.01(d). If a claimant fails to comply with subsection (d) "within the time required, the court shall, on the motion of the affected physician or health care provider, enter an order awarding as sanctions against the claimant or the claimant's attorney ... the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling." *Id.* § 13.01(e). If the plaintiff does timely file a report, the defendant may move to challenge the adequacy of the report, requesting dismissal, and the trial court must grant the motion if it appears to the court that the report does not represent a good faith effort to comply with the definition of an "expert report." *Id.* § 13.01(*l* ).

### DENIAL OF EXTENSION OF TIME TO FILE EXPERT REPORT

In their first issue, the Forrests contend the trial court erred in denying their request for an extension of time under section 13.01(g) of the Act. Subsumed under this issue are four subissues: (1) that the inadequacy of the expert report was not intentional or due to conscious indifference, (2) that the inadequacy of the expert opinion was the result of accident or mistake, (3) the legislature intended trial courts to use "special caution" in dismissing cases without granting a thirty-day grace period under section 13.01(g), and (4) public policy requires courts to protect a litigant's right of due process.

■ We review the trial court's decision to deny a request for extension of time pursuant to section 13.01(g) under an abuse of discretion standard. *Marquez v. Providence Mem. Hosp.*, 57 S.W.3d 585, 590 (Tex.App.—El Paso 2001, no pet.); *Hargrove v. Denno*, 40 S.W.3d 714, 716 (Tex.App.—San Antonio 2001, no pet.). An abuse of discretion with respect to factual matters occurs if the record establishes the trial court acted without reference to any guiding rules or principles, or in other words, acted in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *Christian v. Christian*, 985 S.W.2d 513, 514 (Tex.App.—San Antonio 1998, no pet.).

The Act contains three distinct provisions by which a plaintiff who has not complied with the Act's requirements for filing an expert report may receive an extension of time to file his expert report. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(f), (g), & (h). Pertinent to this case, subsection (g) provides that:

Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure ... was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be con-

sidered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section. *Id.* § 13.01(g).

■ The Forrests filed their expert report on April 28, 1999 and their amended report on June 18, 1999. About fifteen months later, after the first appeal to this court and remand to the trial court and, most importantly, more than a month after the hearing on Dr. Danielson's motion to dismiss, the Forrests filed their 13.01(g) motion for extension of time. To be timely, a motion for extension of time pursuant to section 13.01(g) must be filed before any hearing on a motion by a defendant under section 13.01(e). The Forrests' motion was untimely. Therefore, the trial court did not abuse its discretion in denying it. *Hargrove,* 40 S.W.3d at 716. As this disposes of issue one, we need not address the arguments under this issue. TEX. R.APP. P. 47.1. We overrule the Forrests' first issue.

### SUFFICIENCY OF EXPERT REPORT

In their second issue, the Forrests contend that the trial court erred in finding their expert report failed to meet the requirements of article 4590i. They assert that Dr. Callewart's report met the requirements of section 13.01(r)(6), which identifies the matters to be contained in the report. They contend that Dr. Callewart's report informed the defendants of the specific conduct of which they complained, and Dr. Callewart's report was sufficient for the trial court to find their claims meritorious. Therefore, their argument continues, as the report met the statutory requirements, the trial court erred in dismissing their suit.

On April 23, 1999, the Forrests filed their first expert report required by article 4590i. It consists of a one page letter from Dr. Callewart describing Mrs. Forrest's medical history since mid–1991. Dr. Callewart stated that he felt the surgery was unnecessary and he saw no indication for a three-level fusion. On May 5, 1999, Dr. Duncan and Dr. Kerns filed a motion to compel the Forrests to comply with the requirements of article 4590i, section 13.01 and requesting dismissal if they failed to comply. On June 18, 1999, the Forrests filed an amended expert report in which the only change was to individually name each doctor as performing the procedure, and to add the words "and improper" to the sentence "I feel this surgery was unnecessary." Finally, the amended report concluded that "More likely than not, this procedure caused Ms. Forrest to have symptoms and findings not present prior to surgery." Neither the original nor the amended report named Trinity–Mother Frances Health System.

The defendants filed motions to dismiss the cause of action pursuant to section 13.01(e). They alleged the amended expert report failed to meet the requirements of section 13.01(d). Citing section 14.01 of the Act, the three physicians contended the amended expert report failed to establish that Dr. Callewart, an orthopedic surgeon, had the qualifications to give an expert opinion regarding the defendant doctors, one of whom is a neurosurgeon and two of whom are vascular surgeons. The defendants also contended the expert report did not comply with the definition of expert report in section 13.01(r)(6) in that it failed to establish knowledge of applicable standards of medical care, how any of the defendants' actions failed to meet the standard of care, or the causal connection between the alleged failure to meet the standard and the injury. Further, the hospital asserted that the report does not refer to any act by any employee or agent of Trinity–Mother Frances.

■ Since the trial court entered its dismissal order, the Texas Supreme Court has addressed the Forrests' issue in *American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873 (Tex.2001), which held that a trial court's decision to dismiss a case under section 13.01 of the Act is reviewed under an abuse of discretion standard. *Id.* at 877. A trial court shall grant a motion challenging the adequacy of an expert report if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the statutory definition of an expert report. TEX.REV.CIV. ANN. art. 4590i, § 13.01(*l*). The statute defines an expert report as "a written report by an expert that provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 13.01(r)(6). A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *Palacios*, 46 S.W.3d at 878. The report does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial. *Id.* at 879. The report must fulfill the dual purpose of notifying each defendant of the specific conduct called into question and providing support for a trial court to conclude the claims have merit. *Id.* A report that merely states the expert's conclusions does not fulfill these two purposes. *Id.* A report that lacks any of the statutory requirements cannot constitute a good faith effort. *Id.* In determining whether the report represents a good faith effort, the trial court's inquiry is limited to the four corners of the report. *Id.* at 878. If a trial court determines that an expert report does not meet these statutory requirements and the time for filing a report

has passed, it must then dismiss with prejudice the claims against the defendant who has challenged the report. *Id.* at 877.

■ One basis on which the defendants attacked the report was that it failed to show that Dr. Callewart was qualified to be an expert witness in this case. Mrs. Forrest underwent a surgical procedure to remove a disc protrusion in her back. Dr. Duncan and Dr. Kerns exposed the spine, by way of the abdomen, to provide Dr. Danielson's access so he could perform the lumbar intervertebral fusion. Dr. Danielson specializes in neurosurgery, surgery of the nervous system. Drs. Kerns and Duncan are vascular surgeons. According to Dr. Callewart's curriculum vitae, he is board certified in orthopedic surgery.

■ Section 14.01 of the Act sets out the requirements for an expert witness in a suit against a physician:

[A] person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 14.01(a). In determining whether the expert is qualified on the basis of training and experience, the court is to consider whether, at the time the claim arose or the testimony is given, the witness is board

certified or has other substantial training or experience in an area of practice relevant to the claim and is actively practicing medicine in rendering medical care services relevant to the claim. *Id.* § 14.01(c). Because of the increasing specialization of medicine, "there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question .... [t]he proponent of the testimony has the burden to show that the expert 'possesses special knowledge as to the very matter on which he proposes to give an opinion.'" *Broders v. Heise,* 924 S.W.2d 148, 152–53 (Tex.1996) (quoting 2 RAY, TEXAS LAW OF EVIDENCE: CIVIL AND CRIMINAL § 1401, at 32 (Texas Practice 3d ed. 1980)). Thus, the issue is the specific subject matter and the expert's familiarity with it. *Broders,* 924 S.W.2d at 153.

Orthopedic surgery is the branch of surgery that deals with the correction of injuries. or disorders of the skeletal system and associated muscles, joints, and ligaments. THE AMERICAN HERITAGE STEDMAN'S MEDICAL DICTIONARY 586 (1995). As the spine is part of the skeletal system, one who specializes in orthopedics should be familiar with procedures to correct problems of the spine. Thus, Dr. Callewart's specialization might be relevant to the Forrests' claim. However, there is nothing in the expert report or Dr. Callewart's curriculum vitae to indicate that he is familiar with either the procedure used by Drs. Duncan and Kerns to gain access to the spine, or with the procedure used by Dr. Danielson to remove the disc protrusion and install the pedicle screw and rod system. Dr. Callewart does not state that he has knowledge of the accepted standards of medical care for the diagnosis, care, and treatment of a disc protrusion. Further, Dr. Callewart does not show he is qualified on the basis of his training or experience to offer an expert opinion regarding those accepted standards of medical care. In short, the Forrests did not establish that Dr. Callewart was qualified to give an expert opinion as to the medical procedure performed on Mrs. Forrest. *See Broders,* 924 S.W.2d at 153.

■ As previously noted, the trial court is to consider whether the expert report represents a good faith effort to comply with the definition in section 13.01(r)(6). In order for an expert report to constitute a good faith effort, it must contain "as to each defendant, a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury." *Palacios,* 46 S.W.3d at 878. The amended expert report filed in this case lacks all of the requirements of section 13.01(r)(6). The report contains a review of the medical records, which is not required by section 13.01(r)(6). Moreover, not only does it not present a fair summary of the three required elements, it does not even recite an applicable standard of care, explain how the medical care failed to meet that standard, or identify the causal relationship between that failure and the claimed injury. Rather, the report states that "this surgery was unnecessary and improper" and concluded that "[m]ore likely than not, this procedure caused Ms. Forrest to have symptoms and findings not present prior to surgery." Such conclusions are inadequate to meet the requisites of section 13.01(r)(6). The trial court did not abuse its discretion in finding the expert report failed to meet the statutory requirements.

This lawsuit was filed November 16, 1998. The initial expert report was filed April 28, 1999, and was amended June 18, 1999. The hearings on defendants' motions to dismiss were held June 29, 2000

and August 3, 2000. *Palacios* held that, after the expiration of the 180–day time period after the filing of the lawsuit, if no good faith expert report has been filed pursuant to section 13.01(d), section 13.01(e) requires the trial court to dismiss the case with prejudice. *Id.* at 880. The June 29, 2000 hearing regarding Dr. Danielson was over a year and seven months after the lawsuit was filed, and more than a year and one month after the expert report was required to be filed. The August 3, 2000 hearing regarding Drs. Duncan, and Kerns, and Trinity–Mother Frances Hospital was over one year and eight months after the lawsuit was filed, and over one year and two months after the expert report was required to be filed. Accordingly, the trial court was required to dismiss the lawsuit. *Id.* The Forrests' second issue is overruled.

Having found no reversible error, we *affirm* the trial court's order of dismissal.