NO. 07-04-0018-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 27, 2004

_____

IN RE: THOMAS R. WINDISCH, M.D.
AND LUBBOCK DIAGNOSTIC RADIOLOGY, L.L.P.

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**OPINION**

In this original proceeding relators Thomas R. Windisch, M.D., and Lubbock Diagnostic Radiology, L.L.P., seek a writ of mandamus directing the Honorable Blair Cherry to grant their motion to dismiss the medical malpractice action pending against them. We will conditionally grant relators' petition.

Windisch is a medical doctor, described in his mandamus petition as an interventional neuroradiologist. In October 2001 Cynthia Powell was diagnosed with a large brain tumor. A neurosurgeon referred Powell to Windisch for the interventional

procedures of angiography[1] and embolization[2] in preparation for surgery. After performance of those two procedures, images showed a small hemorrhage in Powell's brain. She subsequently suffered from seizures and significant neurological impairment.

Real Party in Interest Loretta Ray, acting as next friend for Powell, brought suit in November 2002 against Windisch, alleging medical malpractice. In an effort to comply with Section 13.01 of the Medical Liability and Insurance Improvement Act,[3] Ray attached to her petition a written report from Gregory Shenk, M.D., a radiologist practicing in Illinois. That report recited that Shenk had reviewed a record created by Ray during Powell's hospitalization, a report by Windisch on the procedure at issue, records from Powell's neurosurgeon, and hospital records. Ray subsequently amended her petition to add Lubbock Diagnostic Radiology, L.L.P., as a defendant, alleging its vicarious liability.

The substance of Shenk's opinion was that Windisch's care of Powell fell below the accepted standard of care when he performed the embolization after determining that the primary blood supply to the tumor was the right anterior cerebral artery, rather than discontinuing the procedure and notifying the referring neurosurgeon. With regard to the causal relationship between Windisch's conduct and Powell's injury, the report stated "it

---

[1] Angiography was used to identify arteries supplying blood to the tumor.

[2] Embolization involves placement of small particles and wires into the blood vessels for the purpose of cutting off the blood supply to a tumor.

[3] The Act was former Article 4590i of Texas Revised Civil Statutes. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985-87. It was repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 884. The current version appears at Tex. Civ. Prac. & Rem. Code Ann. § 74.001 - 74.507 (Vernon Pamph. Supp. 2004). All section references in this opinion are to the Act prior to its repeal.

was medically predictable and foreseeable that the inappropriate embolization procedure performed by Dr. Thomas R. Windisch would cause cerebrovascular accident, left hemiplegia and possibly subarachnoid hemorrhage." The report made reference to Shenk's qualifications and had attached his curriculum vitae.

Relators filed a motion to dismiss challenging Shenk's report under Section 13.01(l) of the Act and arguing that the report failed to meet the requirements of Section 13.01(r)(6). Section 13.01(l) requires a court to grant a motion challenging the adequacy of an expert report if it appears to the court the report does not represent a good faith effort to comply with the definition of an expert report in Section 13.01(r)(6). Section 13.01(r)(6) defines "expert report" to mean:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damage claimed.

Relators did not allege Shenk's report failed to address each of the subjects necessary to an expert report under the statute or that his opinions were conclusory. *See American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 878-79 (Tex. 2001); *Forrest v. Danielson*, 77 S.W.3d 842, 847 (Tex.App.–Tyler 2002, no pet). They challenged Shenk's qualifications to render an expert opinion. The motion relied exclusively on the text of the statute and Shenk's report. After a December 5, 2003 hearing on the motion to dismiss and other motions then pending, the trial court overruled the motion to dismiss by

written order signed January 14, 2004. Relators now seek a writ of mandamus directing the trial court to grant their motion to dismiss.

A writ of mandamus is an extraordinary remedy that will issue only (1) to correct a clear abuse of discretion or the violation of a duty imposed by law, when (2) there is no adequate remedy by law. *See Canadian Helicopters v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding). It is the relator's burden to show entitlement to the relief being requested. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). A court abuses its discretion by ruling arbitrarily, unreasonably or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). A trial court also abuses its discretion by a clear failure to analyze or apply the law correctly, because trial courts have no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

The second requirement for mandamus relief is met only when a party is in danger of permanently losing substantial rights if the ruling of the trial court is allowed to stand. *Id.* at 842. Because a purpose of the expert report requirement of Section 13.01 was to provide some protection to health care providers from the cost of litigating unmeritorious claims, this court has held that the erroneous failure to dismiss when an adequate report is not submitted can meet the second requirement for mandamus relief. *See In re Rodriguez*, 99 S.W.3d 825, 828 (Tex.App.--Amarillo 2003) (orig. proceeding); *In re Morris*, 93 S.W.3d 388, 390 (Tex.App.--Amarillo 2002) (orig. proceeding); *see also In re Highland Pines Nursing Home, Ltd.*, No. 12-03-0221-CV, 2004 Tex. App. Lexis 591 (Tex.App.--Tyler,

January 21, 2004) (orig. proceeding); *In re Tenet Hosps., Ltd.*, 116 S.W.3d 821, 827 (Tex.App.–El Paso 2003) (orig. proceeding); *In re Collom & Carney Clinic Ass'n*, 62 S.W.3d 924, 929-30 (Tex.App.–Texarkana 2001) (orig. proceeding).

At oral argument Ray contended that our Supreme Court's recent denial of several petitions for writs of mandamus in health care liability cases indicates that mandamus relief is not appropriately granted to correct a trial court's allegedly improper failure to dismiss such a case following a challenge to the Section 13.01 report.[4] Pending a definitive ruling from the high court, we will adhere in this case to this court's previously-expressed view that mandamus is available in a proper case. *Rodriguez*, 99 S.W.3d at 828.[5]

Ray also urges that a challenge to a Section 13.01 report cannot be based only on a challenge to the expert's qualifications. Referring to the definition of expert report in Section 13.01(r)(6), and to the discussion of that definition and of Section 13.01(l) in *Palacios*, Ray argues that the only issues to be considered in a motion under Section 13.01(l) are the report's sufficiency as a fair summary of the expert's opinions concerning liability and causation. Ray points out relators do not argue that Shenk's report did not contain a fair summary of his opinions concerning the applicable standard of care, its breach and the causal relationship between the breach and Powell's injuries, and argues

[4]*See In re Woman's Hospital of Texas, Inc.*, 47 Tex. Sup. Ct. J. 346 (Tex. March 5, 2004). *See also In re Hill Regional Hosp.*, No.10-04-0071-CV (Tex.App.–Waco, April 14, 2004) (orig. proceeding) (Gray, CJ, dissenting).

[5] *See also In re Schneider*, No. 14-04-0169-CV (Tex.App.–Houston [14th Dist.], May 13, 2004) (orig. proceeding) (noting denial of petition in *In re Woman's Hospital* and adhering to the court's prior holding that mandamus is not available in these circumstances).

that relators' petition in this court therefore simply is an effort to seek reversal of the trial court's denial of their motion to exclude Shenk's testimony,[6] relief not properly available by mandamus. We disagree.

An expert report, as defined in Section 13.01(r)(6), must be the written report of an expert. By definition also, a person giving opinion testimony regarding a physician's breach of accepted standards of medical care is an expert only if qualified to testify under the requirements of Section 14.01(a). §13.01(r)(5)(A). A Section 13.01 report concerning standards of care for physicians authored by a person who is not qualified to testify under Section 14.01(a) thus cannot constitute an adequate report. That the person is so qualified must appear from the report, with its accompanying curriculum vitae. *See In re Highland Pines Nursing Home, supra*; *Chisholm v. Maron*, 63 S.W.3d 903, 907 (Tex.App.–Amarillo 2001, no pet.). It follows that a challenge to adequacy of a report under Section 13.01(l) may be based on a claim that it fails to demonstrate the person rendering the opinion is qualified to testify, as well as on other claims of its inadequacy.

Shenk testified at the December 5 hearing. Relators have submitted the reporter's record from that hearing with their petition in this court, and make reference in their petition to Shenk's testimony. As noted, the determination of Shenk's qualifications to provide an expert report must be made on the basis of the contents of the report and curriculum vitae. *Chisholm*, 63 S.W.3d at 907; *see Palacios*, 46 S.W.3d at 878. A court reviewing the adequacy of a Section 13.01 report should look no further than the report itself, because

---

[6]The trial court's January 14 order also denied relators' motion to exclude plaintiff's expert, Gregory Shenk, M.D.

all information relevant to the inquiry is contained within its four corners. *Bowie Memorial Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Palacios*, 46 S.W.3d at 878. Accordingly, we must make our determination from the four corners of Shenk's report and its attached curriculum vitae, and we have not taken the record of the December 5 hearing or Shenk's testimony into consideration in our disposition of relators' petition.

Ray's suit alleged that Windisch breached the accepted standard of care in his performance of the embolization.[7] Relators' mandamus petition contends the trial court committed a clear abuse of discretion in failing to dismiss because Shenk's report so clearly failed to provide a basis on which the court could find he was qualified to render an expert opinion on the issues of standard of care and breach that it was not a good faith effort to comply with Section 13.01. The petition separately makes the same contention with respect to Shenk's qualifications to opine on causation. Because we conclude that relators are correct in their contention regarding Shenk's qualifications on the standard of care, we do not reach their separate argument concerning his qualifications on causation.

Shenk is board certified by the American Board of Radiology. He has training and experience in neuroradiology, as indicated by a 1977-78 fellowship in neuroradiology listed on his curriculum vitae. He joined the American Society of Neuroradiology in 1979. His

---

[7]Ray's pleadings alleged that "a neuroradiologist of reasonable and ordinary prudence . . . would have adequately diagnosed the surgical problem, and would not have caused the 'bleed' in question." They further alleged, duplicating language from Shenk's Section 13.01 report, that Windisch failed to meet the standards of care in that he "attempted to perform an ill advised and medically inappropriate intracranial embolization after learning that the primary blood supply was the right anterior cerebral artery when he should have withdrawn and notified the neurosurgeon . . ."

curriculum vitae also reflects some experience in interventional neuroradiology. In 1978-80, as an assistant professor of radiology, he taught neuroradiology cases for radiology residents at the University of Tennessee. In 1987-88, he served at the University of Illinois as an assistant professor of neuroradiology and interventional procedures. At oral argument, Ray emphasized Shenk's board certification in radiology and his teaching experience in interventional procedures as demonstrating his qualifications as an expert. His curriculum vitae does not indicate recent experience in interventional procedures. Since 1988, Shenk has served as medical director of several magnetic resonance imaging ("MRI") centers, his curriculum vitae indicating that at the time of the report, he was serving as medical director of three such facilities.

In a suit against a physician, the expert report required by Section 13.01 is a written report by an expert qualified to testify under the requirements of Section 14.01(a), which mandates the witness: (1) be practicing medicine at the time of his testimony or at the time the claim arose; (2) have knowledge of the accepted standards of care for the diagnosis, care, or treatment of the condition involved; and (3) be qualified on the basis of training or experience to offer an expert opinion on those accepted standards of care. §14.01(a). Section 14.01(c) provides a court with factors it is to consider in determining whether a witness's training or experience qualifies the witness as an expert under the Act. The factors are whether, at the time the claim arose or when testimony is given, the witness (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and (2) is actively practicing medicine rendering medical care services relevant to the claim. *Id.* Courts have referred to the standards discussed in

*Broders v. Heise*, 924 S.W.2d 148 (Tex. 1996), in applying the criteria specified in Sections 14.01(a) and (c). *See Forrest*, 77 S.W.3d 842*; Hagedorn v. Tisdale*, 73 S.W.3d 341 (Tex.App.–Amarillo 2002, no pet.)*; Tomasi v. Liao*, 63 S.W.3d 62 (Tex.App.–San Antonio 2001, no pet.). *Broders* teaches that one offering expert medical testimony must establish that the expert has expertise regarding "the specific issue before the court which would qualify the expert to give an opinion on that particular subject." 924 S.W.2d at 153. The analysis focuses on "the very matter" on which the expert is to give an opinion. *Id*.

In *Tomasi*, the court affirmed the dismissal of a claim after finding the plaintiff's expert, a psychiatrist, could not give an expert opinion on the standards of care for post-operative care after neurosurgery, despite his status as a diplomate of the American Board of Psychiatry and Neurology. The court noted it was possible for experience similar to that described in the expert's curriculum vitae to qualify a witness to testify about the specific matters at issue but, citing *Broders*, found the witness had not provided sufficiently detailed information to justify the conclusion he was qualified to do so. 63 S.W.3d at 66.

Similarly, in *Forrest*, an orthopedic surgeon submitted a Section 13.01 report in a suit against a neurosurgeon and two vascular surgeons over surgery to remove a lumbar disc protrusion, fuse vertebra and install a pedicle screw and rod system. The court noted that orthopedic surgery deals with correction of disorders of the skeletal system, that the spine is a part of that system, and that an orthopedic specialist should be familiar with procedures to correct problems of the spine. Concluding that the expert's specialization in orthopedics might thus be relevant to the claim involved in the case, the court nonetheless found there was nothing in the report and curriculum vitae to indicate his familiarity with the procedures

used by the defendant physicians, and the plaintiffs had failed to establish his qualifications to give an expert opinion with respect to those procedures. 77 S.W.3d at 848.

This court has stated that, in reviewing the qualifications of one rendering a Section 13.01 report, the "issue is the specific subject matter and the expert's familiarity with it." *Hagedorn*, 73 S.W.3d at 350, citing *Broders*, 924 S.W.2d at 153. The requirement that a Section 13.01 report and curriculum vitae set forth the expert's knowledge of the procedure being questioned obtains even when the defendant physician and the expert share certification in the same specialty. *See Richburg v. Wolf*, 48 S.W.3d 375, 378 (Tex.App.–Eastland 2001, pet. denied).

*Broders* recognized also that when the subject under inquiry is substantially developed in more than one field, testimony can come from a qualified expert in any one of them. 924 S.W.2d at 154. Likewise, courts have recognized that some standards of care are applicable to multiple schools of practice, and some subjects of inquiry will be common to all fields of practice. *See Blan v. Ali*, 7 S.W.3d 741 (Tex.App.–Houston [14th Dist.] 1999, no pet.). In *Silvas v. Ghiatas*, 954 S.W.2d 50, 54 (Tex.App.–San Antonio 1997, writ denied), a divided panel found an orthopedic surgeon qualified to testify against a radiologist as to the issues there involved, stating that the specialties are intertwined and it is common knowledge that orthopedic surgeons and radiologists work closely together.

Except for some conclusory statements,[8] Shenk's report contains only brief statements referencing his qualifications.[9] Both Shenk and Windisch are radiologists. Nothing in Ray's pleadings or in Shenk's report or curriculum vitae allows us to presume, though, that the issues involved in this case are so common to radiology that any credentialed radiologist can testify to the applicable standard of care. His fellowship in neuroradiology and his teaching appointments earlier in his career might indicate familiarity with the interventional procedure Windisch performed on Powell, but cannot reasonably be said to demonstrate that he has knowledge of the accepted standard of care for the procedure. Moreover, despite the statement in Shenk's report that he was then "actively practicing medicine in rendering medical care services relevant to this case,"[10] nothing in the report connects Shenk's positions since 1988 as medical director of MRI facilities to expertise in the procedure performed by Windisch. Absent from the report and curriculum vitae is any explanation of the manner in which Shenk's credentials carry with them familiarity with the "very matter" on which he proposes to opine. *Broders*, 924 S.W.2d at 153. The conclusory references in the report to Shenk's "extensive" background in

---

[8]The report states: "I have knowledge of the accepted standard of care for the treatment of the condition in question." "I am qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care." "I am actively practicing medicine in rendering medical care services relevant to this case and in the medical specialty of Radiology."

[9]The report further states: "I have been board certified in the medical specialty of Radiology since 1978. I also have [an] extensive educational background in the field of Neuroradiology and have been a member of the American Society of Neuroradiology since 1979." The report also states, in its concluding paragraph: "The opinions that I have stated in this report . . . are based on my training and experience as a board certified Radiologist with an extensive background in Neuroradiology, and upon reasonable medical probability."

[10]Generally tracking the language of Section 14.01(c)(2).

-11-

neuroradiology do not bridge the gap.[11] From the four corners of the report and curriculum vitae, we find no basis for a conclusion that Shenk's training or experience qualify him to offer an expert opinion on the standard of care for the performance of embolization of brain tumors, and we must conclude that the report and curriculum vitae cannot reasonably be read to demonstrate that Shenk is so qualified. That being the case, the report is not an expert report within the requirements of Section 13.01. *Chisholm*, 63 S.W.3d at 907; *see Palacios*, 46 S.W.3d at 879; *In re Morris*, 93 S.W.3d at 390-91; *Whitworth v. Blumenthal*, 59 S.W.3d 393, 398-99 (Tex.App.–Dallas, 2000, pet. dism'd by agr.) (en banc).

In most of the cases on which we have relied for guidance, *e.g., Forrest*, 77 S.W.3d at 844*; Tomasi*, 63 S.W.3d at 63, appellate courts were reviewing decisions of trial courts to dismiss cases, while we have before us a claim that the trial court has abused its discretion in failing to dismiss the case. We consider the requirement that the Section 13.01 report and curriculum vitae set forth the expert's familiarity with the particular procedure at issue to be sufficiently well established, though, to require its application here. Accordingly, we conclude that, under the standards set forth by the Supreme Court in *Palacios*, the trial court misapplied Section 13.01(l) to the report submitted by the plaintiff in this case, and so abused its discretion. *See Walker*, 827 S.W.2d at 840. Finding also that relators have no adequate remedy by appeal, we will conditionally grant the petition

---

[11]*Palacios* makes clear that an expert report by which the expert simply states that he or she knows the standard of care and concludes it was not met is not sufficient to meet the requirements of Section 13.01. *See Palacios*, 46 S.W.3d at 880. It likewise cannot be sufficient for one rendering a section 13.01 report simply to state in conclusory fashion that he is qualified by training or experience to testify as to a particular matter. *Cf. Coastal Transport Co., Inc. v. Crown Central Petroleum Corp.*, 47 Tex. Sup. Ct. J. 559 (Tex. May, 14, 2004); *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999).

for writ of mandamus.  We are confident the trial court will grant the relief to which relators are entitled under Section 13.01(e) and this opinion.  We will direct the Clerk to issue the writ only in the event the trial court does not do so.

Per Curiam