COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





MARIO PADILLA, M.D.,

                                    Appellant,

v.

ANITA LOWEREE,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-10-00052-CV

Appeal from
 34th District Court

of El Paso County, Texas

(TC # 2005-1403)



 

 

 




O P I N I O N

            Dr. Mario Padilla brings this interlocutory appeal from the trial court’s denial of a motion
to dismiss the health care liability claims against him on the basis of an inadequate expert report. 
At issue is a brachial plexus injury occurring during gynecological surgery. For the reasons that
follow, we affirm.
FACTUAL SUMMARY
            Anita Loweree filed a medical malpractice suit against Paso Del Norte Surgery Center and
Drs. Mario Padilla and Efrain Rivera. She alleged the defendants were negligent in positioning her
body during a surgical procedure which resulted in permanent neurologic damage in her right upper
extremity. Dr. Padilla performed the surgery while Dr. Rivera provided anaesthesia services. 
            Loweree timely filed an expert report and curriculum vitae of Dr. Allen, an orthopedist. The
report, dated May 17, 2005, stated simply: 
I am a physician licensed and currently practicing in New Mexico. Based on my
training, education and experience I have knowledge of the standard of care for
positioning patients for surgery, whether gynecological, orthopedic or other specialty
and for their monitoring during the post-anesthesia and recovery periods and am
qualified to give opinions on the standard of care, breach of the standard of care and
causation in this case, which involves either positioning for surgery or post-anesthesia and recovery care.

. . .
 
Based on review of records it is my opinion that Anita Loweree’s treatment fell
below the standard of care by allowing pressure or traction on her brachial plexus to
occur and continue until she suffered the plexopathy documented as quoted above,
either as a result of inadequate care by those who positioned her while she was
anesthetized, for which those who positioned her and, ultimately, the surgeon are
responsible, or as a result of inadequate monitoring during recovery, which is the
responsibility of nursing staff monitoring her; and that as a result she suffered a
brachial plexus injury. 
 
These opinions are expressed ‘to a reasonable medical probability.’

Dr. Padilla filed a motion challenging the adequacy of the expert report and asked the court to
dismiss the case. He argued the report was not an objective good faith effort to comply with the
statute because it: (1) fails to identify Dr. Padilla; (2) is premised upon the “captain of the ship”
doctrine, which Texas has rejected as a theory of liability; (3) fails to explain how or why Dr. Allen
is qualified to render an expert opinion on the standard of care; (4) fails to enunciate the standard of
care; (5) does not adequately explain the causal nexus between the alleged breach and Loweree’s
injury; (6) does not explain the injury; (7) equivocated on when and how the injury arose; and (8)
was conclusory since it failed to explain how Dr. Padilla caused the injury. See Padilla v. Loweree,
242 S.W.3d 544, 546 (Tex.App.--El Paso 2007, no pet.). After a hearing, the court found that the
report was deficient, but granted Plaintiff’s request for a thirty day extension to cure the report’s
errors and denied Dr. Padilla’s motion to dismiss.



            Loweree timely filed a curative report and curriculum vitae by Dr. Allen dated July 11, 2006. 
Dr. Padilla again objected by filing a motion to dismiss Loweree’s claims asserting the July 11, 2006
curative report failed to comport with Section 74.351(r)(6) of the Texas Medical Liability Act. In
the motion, Dr. Padilla argued that many of the initial problems were repeated in the curative report
and he incorporated all of his previous arguments and authorities. 
            Following a hearing on Dr. Padilla’s motion, the trial court entered judgment determining
that the curative report constituted an objective, good-faith effort to comply with the Texas Medical
Liability Act, and denied Dr. Padilla’s motion to dismiss. This appeal follows. Dr. Padilla
complains that the trial court should have dismissed the suit based on his challenges to the adequacy
of Dr. Allen’s July 2006 curative report because: (1) Dr. Allen lacks the requisite expertise to render
opinions on the standard of care, breach, and causation; (2) Dr. Allen’s report failed to set out the
standard of care and any specific breach by Padilla; and (3) Dr. Allen’s report did not provide an
explanation of the casual nexus between Padilla’s alleged breach and Loweree’s injury. 
STANDARD OF REVIEW
            A trial court’s ruling on a motion to dismiss a health care liability claim is reviewed for clear
abuse of discretion. See Bowie Memorial Hospital v. Wright, 79 S.W.3d 48, 52 (Tex. 2002);
American Transitional Care Ctrs. Of Texas, Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001). See
also Kendrick v. Garcia, 171 S.W.3d 698, 702-03 (Tex.App.--Eastland 2005, pet. denied)(utilizing
the abuse of discretion standard of Palacios to review denial of a motion to dismiss under Section
74.351). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without
reference to any guiding rules or principles. Kendrick, 171 S.W.3d at 703, citing Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106
S.Ct. 2279, 90 L.Ed.2d 721 (1986). There is no abuse, however, simply because a trial court may
decide a matter within its discretion differently than an appellate court. Downer, 701 S.W.2d at 242. 
When reviewing matters committed to the trial court’s discretion, a court of appeals may not
substitute its own judgment for that of the trial court, thus insulating the trial court’s decision from
appellate second guessing. Wright, 79 S.W.3d at 52.
APPLICABLE LAW
            A claimant shall, not later than the 120th day after the date the claim was filed, serve on each
party or party’s attorney one or more expert reports, with a curriculum vitae of each expert listed in
the report, for each physician or health care provider against whom a liability claim is asserted.


 See
Tex.Civ.Prac.&Rem.Code Ann. § 74.351(a)(West 2011). 
            If the plaintiff timely furnishes an expert report, a defendant may challenge the report’s
adequacy. Tex.Civ.Prac.&Rem.Code Ann. § 74.351(a). A court shall grant a motion challenging
the adequacy of an expert report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6). Tex.Civ.Prac.&Rem.Code Ann. § 74.351(l). An expert report is defined as: 
[A] written report by an expert that provides a fair summary of the expert’s opinions
as of the date of the report regarding applicable standards of care, the manner in
which the care rendered by the physician or health care provider failed to meet the
standards, and the causal relationship between that failure and the injury, harm, or
damages claimed.

Tex.Civ.Prac.&Rem.Code Ann. § 74.351(r)(6). 
            To constitute a good-faith effort, an expert report must provide sufficient information to
fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into
question; and (2) provide a basis for the trial court to conclude that the claims have merit. Wright,
79 S.W.3d at 52, citing Palacios, 46 S.W.3d at 879. A report need not marshal all of the plaintiff’s
proof, but it must include the expert’s opinion on the standard of care, breach, and causal
relationship. Wright, 79 S.W.3d at 52.
            A defendant may pursue an interlocutory appeal from an order that denies all or part of the
relief sought by a motion under Section 74.351(b). See Tex.Civ.Prac.&Rem.Code Ann. §
51.014(a)(9)(West 2008).
DR. ALLEN’S QUALIFICATIONS
            In Issue One, Dr. Padilla argues the report and curriculum vitae are inadequate because they
fail to demonstrate that Dr. Allen is qualified to testify. There are two kinds of experts in health care
liability claims against physicians: those offering opinions on the standard of care, and those offering
opinions on causation. Tex.Civ.Prac.&Rem.Code Ann. §§ 74.401, 74.403. Dr. Allen’s
qualifications to provide an expert report must be made on the basis of the contents of his report and
curriculum vitae. In re Windisch, 138 S.W.3d 507, 511 (Tex.App.--Amarillo 2004, no pet.);
Chisholm v. Maron, 63 S.W.3d 903, 907 (Tex.App.--Amarillo 2001, no pet.); see Palacios, 46
S.W.3d at 878. A court reviewing the adequacy the report should look no further than the report
itself because all information relevant to the inquiry is contained within its four corners. In re
Windisch, 138 S.W.3d at 511; Wright, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 878. Accordingly,
we must make our determination from a review of the report, including the curriculum vitae.
            With respect to his qualifications, Dr. Allen’s report states: 
I am a physician licensed and currently practicing medicine in the State of New
Mexico and U.K. Certified in Orthopedic Surgery. My current practice is office
based Orthopedics. Based on my training, education and experience I have
knowledge of the standard of care for positioning patients for surgery, whether
orthopedic, gynecological or other specialty and for their monitoring during surgery
and post-anesthesia and recovery periods. My training, education and experience
include but are not limited to making decisions on positioning and monitoring,
prescribing appropriate positioning and monitoring, and oversight of medical, nursing
and other staff in performance of those activities during pre-, intra- and postoperative
periods. I am qualified to give opinions on the standard of care, breach of the
standard of care and causation in this case, which involves positioning for surgery or
post-anesthesia and recovery care and involves an injury to the brachial plexus. 
Brachial plexus injuries are typically treated by orthopedic surgeons or neurosurgeons
and are among injuries I have treated in my orthopedic practice and during my
training in neurosurgery. 
 
While there are additional standards of care specific to individual specialties, there
are fundamental standards that apply to all. These include but are not limited to
positioning and handling the patient in a manner that protects against skin damage
and protects against nerve damage of parts of the body that are not in the operation
field. They include protection against brachial plexus injury for all patients,
regardless of the procedure involved. These standards apply not only to medical
staff, but also to nursing staff, surgical and operating room technicians and other
ancillary paramedical staff participating or involved in these areas and acts of patient
care. Therefore, with respect to Mario Padilla, M.D., the gynecology surgeon in this
case, Efrain Rivera, M.D., the anesthesiologist in this case and employees of Paseo
Del Norte Surgery Center my knowledge and experience of oversight of patient care
in operative and perioperative settings qualify me to offer expert opinions regarding
those standards of care. 

            A person may qualify as an expert witness on the issue of whether the physician departed
from accepted standards of medical care only if the person is a physician who:
(1) is practicing medicine at the time such testimony is given or was practicing
medicine at the time the claim arose;
 
(2) has knowledge of accepted standards of medical care for the diagnosis, care, or
treatment of the illness, injury, or condition involved in the claim; and
 
(3) is qualified on the basis of training or experience to offer an expert opinion regarding
those accepted standards of medical care.

Tex.Civ.Prac. & Rem.Code Ann. § 74.401(a). In determining whether a witness is qualified on
the basis of training or experience, the court shall consider whether, at the time the claim arose or
at the time the testimony is given, the witness:
(1) is board certified or has other substantial training or experience in an area of
medical practice relevant to the claim; and
 
(2) is actively practicing medicine in rendering medical care services relevant to the
claim.
 
Tex.Civ.Prac.&Rem.Code Ann. § 74.401(c). Every licensed doctor is not automatically qualified
to testify as an expert on every medical question. Hagedorn v. Tisdale, 73 S.W.3d 341, 350
(Tex.App.--Amarillo 2002, no pet.); Broders v. Heise, 924 S.W.2d 148, 152 (Tex. 1996). On the
other hand, the fact that an expert is not a specialist in the particular branch of the profession for
which the testimony is offered will not automatically disqualify him as an expert. Hagedorn, 73
S.W.3d at 350; Blan v. Ali, 7 S.W.3d 741, 745 (Tex.App.--Houston [14th Dist.] 1999, no pet.). The
issue is the specific subject matter and the expert’s familiarity with it. Hagedorn, 73 S.W.3d at 350;
see Broders, 924 S.W.2d at 153; Blan, 7 S.W.3d at 745. Here, because Dr. Allen is not in the same
school of practice as Dr. Padilla, i.e. gynecological surgery, he must establish that he has practical
knowledge of what is usually and customarily done by other practitioners under the same or similar
circumstances. Olveda v. Sepulveda, 141 S.W.3d 679, 682 (Tex.App.--San Antonio 2004), pet.
denied, 189 S.W.3d 740 (Tex. 2006). 
            A person may qualify as an expert witness on the issue of the causal relationship between the
alleged breach and the injury claimed, “only if the person is a physician and is otherwise qualified
to render opinions on that causal relationship under the Texas Rules of Evidence.” Tex.Civ.Prac.
&Rem.Code Ann. § 74.403(a). Texas Rule of Evidence 702 requires an expert witness to be
qualified on the basis of “knowledge, skill, experience, training, or education.” Tex.R.Evid. 702.
            In deciding whether an expert is qualified, the trial court must ensure those who purport to
be experts truly have expertise concerning the “actual subject about which they are offering an
opinion.” Cooper Tire & Rubber Co. v. Mendez, 204 S.W.3d 797, 800 (Tex. 2006), citing Gammill
v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 719 (Tex. 1998). The trial court is not required
to admit opinion evidence which is connected to the existing data by the ipse dixit of the expert.
Mendez, 204 S.W.3d at 801. If the expert brings merely his credentials and subjective opinion, his
testimony is unsupported and cannot be of assistance to the jury. Id . Rule 702 requires that expert
testimony actually assist the trier of fact to be admissible. Id. 
            The issue here is a brachial plexus injury resulting from either surgical or post-surgical
positioning. Dr. Padilla maintains that Dr. Allen is not board certified in the United States, and that
he has no training or experience with gynecological surgery. Padilla also contends that Dr. Allen
did not have any surgical experience during the relevant time frame. According to the curriculum
vitae, at the time the injury occurred, Dr. Allen was finishing law school at Texas Tech University
in Lubbock. It is unclear whether his part-time practice in Hobbs, New Mexico remained open
during the time he was enrolled in law school, or what type of medicine he practiced during that
time. From November 2003 through the present (including the time of the report), Dr. Allen had an
office-based orthopedic practice in Albuquerque, New Mexico. His report states that a brachial
plexus injury is an injury generally treated by orthopedic surgeons or neurosurgeons. Additionally,
brachial plexus injuries “are among injuries I have treated in my orthopedic practice and during my
training in neurosurgery.” 
            Dr. Allen makes no reference as to how many brachial plexus injuries he has treated or 
whether he treated any such injuries during the relevant time periods. There is also nothing in the
report or curriculum vitae which states that Dr. Allen was actively rendering care as a surgeon during
either the time the claim arose, or the time the report was written. The last reference to any hospital
staff position in the curriculum vitae is in 1989, when Dr. Allen resigned from the Española Hospital
Medical Staff. 
            While the proper positioning and padding of a patient’s arm during the gynecological surgical
procedure is not a subject exclusively within the knowledge or experience of a physician specializing
in such surgery, Dr. Allen must show he is a physician who is experienced in and familiar with how 
such surgical procedures--including the positioning and padding of patients’ extremities--are
managed. See Barber v. Dean, 303 S.W.3d 819, 826 (Tex.App.--Fort Worth 2009, no pet.). 
According to Dr. Allen’s report, the relevant standard of care is basic and not limited to any
particular specialty. Although Dr. Allen has not practiced in a hospital since 1989, Section 74.401
requires the trial court to consider whether the expert was actively participating in rendering medical
care “relevant to the claim.” Tex.Civ.Prac.&Rem.Code Ann. § 74.401(c). The “actively
participating” prong is a consideration in determining whether the expert has sufficient training or
experience to testify. See id. While Dr. Allen was not active in a hospital practice, he was actively
practicing orthopedic medicine and opined that the injury involved was of the type he treated in his
practice. Therefore, we cannot conclude that the trial court abused its decision in finding that Dr.
Allen was qualified to opine on the standard of care.
            We turn now to causation. The report indicates that Dr. Allen is a physician who had
knowledge and experience concerning the subject of his opinion. Based on the four corners of the
report and curriculum vitae, Dr. Allen is qualified to render an opinion as to the standard of care
required for positioning patients during surgery and the cause Mrs. Loweree’s brachial plexus injury. 
We overrule Issue One. 
ADEQUACY OF THE REPORT
            In Issues Two and Three, Dr. Padilla argues that the trial court erred in denying his motion
to dismiss because Dr. Allen’s report is inadequate under applicable law. An adequate report is one
which provides a “fair summary” of the standard of care, breach of that standard, and an explanation
as to how that breach caused the alleged injury. Tex.Civ.Prac.&Rem.Code Ann. § 74.351(r)(6). 
            Dr. Allen’s report states that his training, education, and experience include “making
decisions on positioning and monitoring, prescribing appropriate positioning and monitoring, and
oversight of medical, nursing and other staff in performance of those activities during pre-, intra-,
and postoperative periods.” Also based on his training, experience, and education, he has
“knowledge of the standard of care for positioning patients for surgery, whether gynecological,
orthopedic or other specialty and for their monitoring during the post-anesthesia and recovery
periods,” and “[is] qualified to give opinions on the standard of care, breach of the standard of care
and causation in this case, which involves either positioning for surgery or post-anesthesia and
recovery care.” Dr. Allen then references extracts from the medical records provided from
Loweree’s December 20, 2002 surgical procedure at Paso Del Norte Surgery Center, including
numerous references to the surgical procedure report, specifically noting when anesthesia started and
finished, the post anesthesia recovery score, and the nursing records, specifically noting the patient’s
complaints of numbness in her right arm. Dr. Allen’s report also recounts from the April 16, 2003
record of Loweree’s care the following: “‘. . . hysterectomy in December 2002 and . . . was unable
to move her right arm after she woke from anesthesia . . . Impression: Global plexopathy. . . . ’” 
Dr. Allen provided the following analysis:
Nursing notes first document right upper extremity dysfunction at 1620 on the day
of surgery. Although nursing staff ‘called and updated’ Dr. Padilla at 1720, which
indicates they spoke with him, the 1740 entry -- ‘call placed to Dr. Padilla to notify
numbness right arm’ -- indicates only placing a call, not that contact was made and
suggests he was not told at 1720. Urgency is not apparent in these notes. 
 
Despite documenting weakness and numbness at 1620, subsequent nursing notes at
1910, 2000, 0010, 0245, and 0615 all indicate Neurologic and Neurovascular as
normal. Since all subsequent notes document continuing weakness and numbness
it is reasonable to conclude that nursing notes at those times were erroneous. 
 
Postoperative nursing notes from PACU quoted above, timed at 1050, 1105, 1120,
1135, and on discharge from PACU all indicate ‘moves 4 extremities or as pre-op.’ 
One would accept these as accurate observations, indicating normal function, but for
the fact, noted in the paragraph above, that five nursing assessments made after the
problem was first documented were presumably all erroneous. 
 
If the PACU observations are correct, then the brachial plexus injury subsequently
documented occurred between the final PACU observation at or about 1230 and
1620, when it was first noted. 
 
Alternatively, [if] the PACU observations are incorrect, Mrs. Anita Loweree suffered
the brachial plexus injury during surgery while under general anesthesia for three
hours and fifty minutes, but it was not identified until 1620, almost five and a half
hours after the end of anesthesia, after which nursing notes again do not document
it at times quoted above.
 
The record is silent on the number and position of armboards, the angle at which
armboards were set, whether they were moved or adjusted and on the position of
Mrs. Loweree’s arms, therefore information is lacking on whether there were errors
in initial arm positioning, but records note ‘Position . . . OK’d by Dr. Padilla,’ which
is taken to mean that Dr. Padilla approved Mrs. Loweree’s positioning. 
 
Post op assessment documents ‘good . . . per Dr. Rivera’ and ‘Patient free of s/s of
injury related to . . . positioning.’ The source of the second observation is not given,
other than at the bottom of the page (page 2 of 2) where there is a nurse signature,
which might be ‘C Finnegan’ below ‘Report given to: A Rogers RN.’ This is taken
to mean Dr. Rivera examined the patient after surgery, but there are no data of
Dr. Rivera’s findings at that examination in that record. 
 
Because these notes give conflicting data the exact time at which Mrs. Loweree
suffered the right brachial plexus injury is not defined, however, she did not have the
brachial plexus injury when she entered the operating room and she did have the
brachial plexus injury not later than 1620. The most likely period in which she
suffered this injury is during surgery, when she was unconscious and immobile for
approximately four hours.
 
This is also the conclusion of her treating hand surgeon, Jose Monsivais, M.D., who
noted her history and examination were ‘. . . compatible with a brachial plexus injury
with incomplete recovery at this time. Nerve conduction velocities and
electromyography confirms the diagnosis. Based on her history and physical
examination along with electrodiagnostic studies and MRI imaging, the etiology of
her brachial plexus is most likely secondary to a traction injury probably from
positioning during her hysterectomy surgery. . . .’
 
The standard of care for surgeons, anesthesiologists, anesthetists, and nurses and all
others who position anesthetized patients includes but is not limited to positioning,
padding and supporting them in such a way that their limbs are not subjected to
pressure or traction injuries to nervous tissue such as Mrs. Loweree suffered. This
is a basic standard to which all who perform this service are held; no specialty or
profession is excused. 
 
While all who participate in positioning a patient are responsible for their acts,
ultimate responsibility for positioning lies with the surgeon. In Mrs. Loweree’s case
these people are Mario Padilla, M.D., gynecology surgeon, Efrain [Rivera], M.D.,
anesthesiologost and nurses and other staff employed by Paseo Del Norte Surgical
Center and involved in intra- and perioperative care of Mrs. Loweree. 
 
While the surgeon is operating and taking no part in positioning or repositioning,
responsibility for the patient’s position and changes in position belongs to the
anesthesiologist and those who assist at the anesthesiologist’s direction or with the
anesthesiologist’s permission. The procedure file confirms this at II: ‘. . . secure
permission from the anesthesiologist before doing anything to anesthetized patient.’ 
After the procedure the surgeon and anesthesiologist are responsible for determining
and approving the patient’s position and for ordering appropriate monitoring and
care. Nursing and ancillary staff responsibility is transferred from department to
department as the patient is transferred between them. 
 
The standard of care for patients during recovery from general anesthesia includes
but is not limited to attention to positioning for the same reasons, but also includes
accurate monitoring, including but not limited to data required by the monitoring and
procedure charts quote above, and reporting abnormal observations such as a fresh
complaint of numbness and weakness in a limb to the patient’s physician as soon as
possible. Responsibility lies with the nursing staff in whose care the patient is placed
at that time. 
 
Because the record is silent on the time of the act or failure to act that created the
brachial plexus injury apportionment of responsibility among Drs. Padilla and
Rivera, and Paseo Del Norte Surgical Center staff is not offered, but these are those
with whom responsibility lies. 
 
Based on the review of records it is my opinion that Anita Loweree’s treatment fell
below the standard of care by allowing pressure or traction on her brachial plexus to
occur and continue until she suffered the plexopathy documented as quoted above,
either as a result of inadequate care by those who positioned her before and while she
was anesthetized, for which those who positioned her and, ultimately, the surgeon are
responsible, or as a result of inadequate monitoring during her recovery, which is the
responsibility of nursing staff monitoring her; and that as a result she suffered a
brachial plexus injury. In the case of Mrs. Loweree the term ‘the surgeon’ refers to
Mario Padilla, M.D., the ‘anesthesiologist’ to Efrain Rivera, M.D. and the nursing
and other staff referred to are those of Paseo Del Norte Surgery Center.

            These opinions are expressed ‘to a reasonable medical probability.’

Standard of Care and Breach Thereof
            In Issue Two, Dr. Padilla argues that the report’s discussion as to the standard of care and
alleged breach are inadequate. He complains that Dr. Allen’s report does not implicate his conduct,
does not state that a standard of care was applicable to any actions or inactions by him, does not
allege that he breached a standard of care, and does not allege that his actions or inactions caused
any harm, injury, or damage to Loweree. 
            A defendant’s breach of the standard of care must be identified by “specific information
about what the defendant should have done differently.” Dr. Allen’s report states that the standard
of care for surgeons, “includes but is not limited to positioning, padding and supporting [patients]
in such a way that their limbs are not subjected to pressure or traction injuries to nervous tissue such
as Mrs. Loweree suffered.” Later in the report, Dr. Allen concludes: 
Based on review of records it is my opinion that Anita Loweree’s treatment fell
below the standard of care by allowing pressure or traction on her brachial plexus to
occur and continue until she suffered the plexopathy documented as quoted above,
either as a result of inadequate care by those who positioned her while she was
anesthetized, for which those who positioned her and, ultimately, the surgeon are
responsible, or as a result of inadequate monitoring during her recovery, which is the
responsibility of nursing staff monitoring her; and that as a result she suffered a
brachial plexus injury. 

            Padilla argues Dr. Allen’s report fails to identify the appropriate actions which should be
taken in the positioning of a patient and what specific acts Dr. Padilla failed to do, or should have
done differently. Although Dr. Allen refers to the lack of information in the reports he studied as
the reason he fails to identify how Mrs. Loweree was positioned and padded, he did not explain how
Mrs. Loweree should have been padded.


 “It is not sufficient for an expert to simply state that he
or she knows the standard of care and concludes it was [or was not] met.” See Chopra v. Hawryluk,
892 S.W.2d 229, 233 (Tex.App.--El Paso 1995, writ denied). “While a ‘fair summary’ is something
less than a full statement of the applicable standard of care and how it was breached, even a fair
summary must set out what care was expected, but not given.” Palacios, 46 S.W.3d at 880. The
report must provide enough information to inform Dr. Padilla of the conduct called into question. 
            In reviewing a trial court’s decision for an abuse of discretion, we cannot substitute our own
judgment for that of the trial court’s. Dr. Allen clearly found fault with the medical records and the
inconsistencies related to the time of injury, both of which he explained in detail. Based on these
facts, we cannot say the trial court abused its discretion in finding that the expert report provided Dr.
Padilla with enough information to inform him that the conduct called into question, i.e. his
positioning of Mrs. Loweree during surgery, caused her injury. Issue Two is overruled.
Causation
            Finally, in Issue Three, Dr. Padilla contends the trial court abused its discretion because the
statements in Dr. Allen’s report as to causation are conclusory and fail to link any alleged breach by
Padilla to the injuries claimed by Loweree in her suit. According to Padilla, the report equivocates
about when the injury arose and who was responsible. 
            A causal relationship is established by proof that the negligent act or omission was a
substantial factor in bringing about the harm and that absent said act or omission the harm would not
have occurred. Costello v. Christus Santa Rosa Heath Care Corp., 141 S.W.3d 245, 249
(Tex.App.--San Antonio 2004, no pet.). An expert report must provide information linking the
defendant’s purported breach of the standard of care to the plaintiff’s injury. Wright, 79 S.W.3d at
53; see also Hutchinson v. Montemayor, 144 S.W.3d 614, 617 (Tex.App.--San Antonio 2004, no
pet.). The expert must also explain the basis of his statements to link his conclusions to the facts. 
Wright, 79 S.W.3d at 52. The report must provide enough information to inform the defendant of
the conduct at issue and allow the trial court to conclude that the suit has merit. Hutchinson, 144
S.W.3d at 617.
            The report includes Dr. Allen’s opinions on the elements of the manner in which the care
rendered failed to meet the applicable standards of care and the causal relationship between that
failure and the injury, harm, or damages claimed. See Tex.Civ.Prac.&Rem.Code Ann. §
74.351(r)(6). He criticizes the nursing notes documenting right upper extremity dysfunction at 1620
followed by five notes indicating normal neurologic responses. “One would accept these as accurate
observations, indicating normal function, but for the fact, noted in the paragraph above, that five
nursing assessments made after the problem was first documented were presumably all erroneous.”
Dr. Allen also reiterated the conclusions of Loweree’s hand surgeon that “the etiology of her brachial
plexus is most likely secondary to a traction injury probably from positioning during her
hysterectomy surgery.” Dr. Allen detailed the importance of positioning and repositioning a patient.
But inadequate reporting hampered his ability to apportion responsibility between Dr. Padilla,
Dr. Rivera, and the surgical staff. The report is far from perfect, but we cannot conclude that the trial
court abused its discretion in finding it adequate. We overrule Issue Three and affirm the judgment.

August 31, 2011                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.