# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00516-CV

### Charles Ly, Appellant

#### v.

### Sara Austin, M.D., and Kent Ellington, M.D., Appellees

#### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
#### NO. GN501313, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Charles Ly appeals from the district court's dismissal of his health care liability claims against Drs. Sara Austin and Kent Ellington (Defendants) for failure to furnish an expert report that complied with the requirements of section 13.01 of the Medical Liability and Insurance Improvement Act (the Act). *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01.[1] Ly asserts that the district court erred in holding that the reports he had furnished failed to comply with section 13.01 and refusing to grant him an additional 30-day grace period to cure any defects. We affirm.

---

[1] Because Ly's claim was filed before September 1, 2003, it is governed by former article 4590i. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140 § 1, 1995 Tex. Gen. Laws 985, 985-87 (adding expert report requirement, at former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d)), repealed and recodified as amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 23.02(a), (d), 2003 Tex. Gen. Laws 847, 864, 884, 898-99 ("House Bill 4") (adopting chapter 74 of the Texas Civil Practice and Remedies Code, applicable only to actions filed on or after September 1, 2003, and continuing prior law in effect for actions filed before that date) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2006)).

**BACKGROUND**

On June 1, 2001, Ly sued Dr. Austin, Dr. Ellington, Seton Medical Center, and three other individual physicians alleging negligence "during the course of medical treatment provided by the above named Defendants . . . beginning on or about March 8, 1999 through March 14, 1999." Defendants are both board-certified neurologists who provided care to Ly during or immediately after he "fell just outside a restaurant" and was taken by ambulance to the Seton emergency room for treatment. Ly alleges that he came under the care of Dr. Austin and other physicians, "who treated him for a diagnosis of stroke." A "CT-Scan was taken and interpreted" by one of the other physicians. Ly "was given the drug Heparin, which was ordered by" Dr. Austin and another physician. Finally, Ly alleged that he was "eventually moved to the hospital floor," where he was treated "for stroke and various other ailments" by Dr. Ellington and another physician. During the course of this treatment, Ly "fell from his hospital bed and severely injured his left arm."

On August 20, 2001, Ly served on the defendants an expert report prepared by Dr. Suzanne E. Page, M.D., with her curriculum vitae attached. *See id*. art. 4590i, § 13.01(d)(1) ("Not later than the later of the 180th day after the date on which a health care liability claim is filed . . . the claimant shall . . . furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report."). Various of the defendants, including Defendants, filed motions to dismiss Ly's claim for failure to furnish a proper expert report. *See id*. art. 4590i, § 13.01(e). The procedural history of the case thereafter was complicated by delays related to the withdrawal of Ly's counsel and his difficulties in obtaining replacement counsel. Of relevance here, after granting Ly a 30-day extension, *id*. art. 4590i,

2

§ 13.01(g), the district court granted Defendants' first amended motions to dismiss and denied Ly a second 30-day extension.[2] The court later severed out Ly's claims against Defendants, making its dismissal order regarding Defendants final. Ly appeals from this order.

## DISCUSSION

On appeal, Ly contends that the district court erred in holding that Dr. Page's report failed to comply with section 13.01 of article 4590i and in refusing to grant him a second 30-day extension.[3]

---

[2] The district court's order stated:

True and correct copies of the motions were served on all parties to this lawsuit;

This suit is being prosecuted under TEX. REV. CIV. STAT. ANN. art. 4590i . . . and was commenced after September 1, 1995, thus bringing this lawsuit under § 13.01 of that article;

More than 180 days have elapsed since the date this action was commenced;

Plaintiff failed to furnish counsel for Defendants a proper expert report pursuant to TEX. REV. CIV. STAT. ANN. art. 4590i, § 13.01(r)(5) and (6);

A previous extension was granted by the Court pursuant to art. 4590i, § 13.01(g) . . . at least 30 days before the hearing;

Plaintiff's second Motion for Extension filed pursuant to art. 4590i, § 13.01(g) . . . should be denied;

Thus, Defendants' motions should in all things be GRANTED.

[3] Although Ly succeeded in obtaining new counsel who vigorously opposed dismissal in district court, Ly is acting pro se on appeal. Perhaps for this reason, his issues on appeal are not explicitly or clearly defined, although we can discern that he principally intends to challenge the two grounds on which the district court held Dr. Page's report inadequate and its refusal to grant him a second 30-day extension. To the extent that Ly is attempting to raise other issues, we hold that they were inadequately briefed and thus waived. *See Fredonia State Bank v. General Am. Life Ins. Co.*,

In holding that Dr. Page's reports failed to comply with article 4590i, section 13.01, the district court relied on the two grounds raised in Defendants' dismissal motions: Dr. Page's report (1) failed to establish that she was an "expert" qualified to testify concerning the matters stated in her report; and (2) lacked a fair summary of her opinions regarding the applicable standard of care, its alleged breach by Defendants, or the causal relationship between the alleged breach and the claimed harm. *Id.* art. 4590i, § 13.01(r)(5), (6).

To comply with the requirements of section 13.01(d), an "expert report" first must be a "written report by an *expert*." *Id.* art. 4590i, § 13.01(r)(6) (emphasis added). Section 13.01(r)(5) defines "expert" to require that a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care be qualified under section 14.01(a). *See id.* art. 4590i, § 13.01(r)(5)(A). Section 14.01(a) requires:

> In a suit involving a health care liability claim against a physician for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who:
>
> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

---

881 S.W.2d 279, 284 (Tex. 1994); *see also Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (pro se litigants not exempt from rules of procedure).

*Id*. art. 4590i, § 14.01(a). In determining whether the expert is qualified on the basis of training or experience, the court is to consider whether, at the time the claim arose or the testimony is given, the witness is board-certified or has other substantial training or experience in an area of practice relevant to the claim and is actively practicing medicine in rendering medical care services relevant to the claim. *Id*. art. 4590i, § 14.01(c). Furthermore, "the report itself must establish the expert's qualifications on the basis of training and experience." *In re Samonte*, 163 S.W.3d 229, 234 (Tex. App.—El Paso 2005, orig. proceeding). In other words, "the only information relevant to the inquiry is within the four corners of the document." *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). The expert's curriculum vitae is considered part of the report. *In re Windisch*, 138 S.W.3d 507, 511 (Tex. App.—Amarillo 2004, orig. proceeding).

An "expert report" must also "provide[] a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6). A court must grant a motion challenging the adequacy of an expert report under subsection (r)(6) only if the report "does not represent an objective good faith effort to comply" with this definition of "expert report." *Id*. art. 4590i, § 13.01(*l*). To constitute a "good faith effort," the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct that the plaintiff has called into question; and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Palacios*, 46 S.W.3d at 879 (Tex. 2001). Although a report need not

marshal all of a claimant's proof, it must include the expert's opinion on each of the elements identified in the statute. *Palacios*, 46 S.W.3d at 878. It is not enough for the report merely to state the expert's conclusions about the statutory elements. *Id.* at 879. "Rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)).

Again, because the statute dictates what is required in the report, the only information relevant to determining whether a report complies with the statute is that within "the four corners" of the report. *Palacios*, 46 S.W.3d at 878. This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *Bowie Mem'l Hosp.*, 79 S.W.3d at 53.

We review a trial court's ruling to dismiss a suit under article 4590i, section 13.01 for an abuse of discretion. *Palacios*, 46 S.W.3d at 877-78. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). A clear failure by the trial court to analyze or apply the law correctly also constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

In her first amended report, Dr. Page described her qualifications as follows:

I am a duly licensed and practicing Board Certified Physician. I have been actively practicing Physical Medicine and Rehabilitation approximately twelve years. . . .

I have examined the medical records pertaining to Charles Ly with a view toward determining whether or not the medical care on the part of any of the physicians departed from the accepted standards of medical care and whether any such departure had a causal relationship between the injury and damage resulting from care by

6

Dr. Sara Austin, Dr. Kent Ellington, Dr. Albert Horn, Dr. Rodney Schmidt, and Seton Hospital. . . .

. . . .

I have knowledge of the accepted standards of care that are applicable to the physicians in this matter for the diagnosis, care, and treatment of the illness, injury, or condition involved in this case, as reflected by the above listed records that I examined.  Care of patients with strokes comprises approximately 20% of my practice.

Dr. Page then proceeded to opine "that the medical care provided by the above doctors and hospitals

failed to meet the applicable standard of care" in the following regards:

. . . .

2)      There is research indicating no benefit in giving ASA vs Heparin in stroke patients and complications of bleeding are higher with heparin in the case of hemorrhage.  In regard to Mr. Ly's case, the standard of care should have been to not give Heparin in view of Mr. Ly's "improving" status in the Emergency Room and CT scan of the brain with bleeding.  Dr. Sara Austin should have ordered an MRI of the brain as recommended by the radiologist in his report and/or get results of the CT scan of the brain done on 2/1999 to compare before deciding whether or not to give Heparin.  Furthermore, Dr. Austin should have explained the risks vs. the benefits of Heparin to Mr. Ly.

3)      Dr. Kent Ellington's failure to manage antihypertensive medication appropriately.  This caused Mr. Ly's blood pressure to fluctuate.  This is critical for the stroke patient to prevent complications.  The standard of care for someone with hypertension and stroke is to maintain the blood pressure high enough to allow adequate cerebral perfusion.  There should have been a parameter to hold the antihypertensive medication if the systolic blood pressure dropped below a certain value.  Dr. Ellington did not order this, causing Mr. Ly's blood pressure to drop and therefore impeding the blood flow to his already injured brain.

. . . .

7

5)      Failure to recognize the risk of fall in this patient.  The doctors, nurses and therapists should all have recognized Mr. Ly's high risk for a fall.  Doctors are trained to know that a patient with a stroke in Mr. Ly's location, would have left neglect, and significant impulsivity.  Both of these medical problems significantly increase the risk for falls. . . .  The fall caused a fracture in his clavical.  This caused significant pain.  Mr. Ly was unable to participate in therapy for a time secondary to the pain.

It is further my opinion that had the above-mentioned doctors met the applicable standard of care, Charles Ly would have had less residual neurologic deficits from his stroke, better function, and less pain.  It is my opinion that the failure of the above-mentioned doctors and hospital to meet the applicable standard of care was a cause of increased pain, lower cognitive ability, and worsened function.

Dr. Page's attached curriculum vitae indicates that she is board-certified in physical medicine and rehabilitation, or physiatry, and independent medical examination, and has what appears to be considerable experience and training in these practice areas.  The district court also had before it a supplement or addendum to Dr. Page's report in which she stated the following:

RE:     Questions about my training to read CT scans of the brain.

To Whom It May Concern.

Two of the three most common rehabilitation diagnoses that a physiatrist manages are stroke and brain injury.  Reviewing basic CT scans of the brain was part of my training as a medical student.  Reviewing many CT scans of the brain with detailed evaluations with attendings in both rehabilitation and radiology was part of my training as a resident.  Continued work reading CT scans of the brain is a very important part of my work as an attending now.  Many rehabilitation units are separate from acute care hospitals, and there is no radiologist available to read CTs immediately.  Therefore, when CT scans of the brain or MRIs of the brain are done on a more emergent basis, copies of the images are brought to me at the rehabilitation unit for my reading.

We conclude that the district court did not abuse its discretion in concluding that Dr. Page failed to establish her qualifications to give opinion testimony regarding the standard of care applicable to Drs. Austin and Ellington and their alleged breaches of it. Every licensed doctor is not automatically qualified to testify as an expert on every medical question. *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). On the other hand, the fact that an expert is not a specialist in the particular branch of the profession for which the testimony is offered will not *automatically* disqualify her as an expert. *Hagedorn v. Tisdale*, 73 S.W.3d 341, 349 (Tex. App.—Amarillo 2002, no pet.); *Blan v. Ali*, 7 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 1999, no pet.). "What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders*, 924 S.W.2d at 153.

Dr. Page's reports do not satisfy this requirement. Her first amended report establishes that, at most, Dr. Page has experience caring for patients who have suffered strokes, likely in a rehabilitation setting. Her addendum addresses only her qualifications regarding the reading of CT scans, and apparently responded to the dismissal motion of another physician whom Ly had alleged negligently misinterpreted his CT scan and failed to diagnose a cerebral hemorrhage. This training and experience does not relate to the specific issues concerning Drs. Austin and Ellington—the duties of care applicable to neurologists in providing emergency care services to a patient who had just suffered a stroke. Ly alleges that Dr. Austin rendered emergency room care to Ly and that Dr. Ellington attended to Ly's needs immediately following his transfer from the emergency room. There is no allegation that either doctor provided Ly treatment beyond that initial

9

period of emergency and post-emergency care. The fact that, during "approximately 20%" of her rehabilitation practice, Dr. Page cares for patients who have suffered strokes does not automatically qualify her to give an expert opinion on the standard of care for doctors treating an emergent or post-emergent stroke patient in an acute care hospital setting. *See Hagedorn*, 73 S.W.3d at 350 (in suit against emergency room physician, absence of any experience in emergency medical care precluded finding that expert was qualified).

Additionally, the report provides no information about the type of care that Dr. Page provides to her stroke patients. From the statement in Dr. Page's report that she practices "Physical Medicine and Rehabilitation," the district court could reasonably infer that the care involves some sort of rehabilitation, but beyond that, the report is silent. An expert cannot rely on generalized, conclusory statements to establish her qualifications; she must provide specific details of her training and experience. *See, e.g.*, *Forrest v. Danielson*, 77 S.W.3d 842, 848 (Tex. App.—Tyler 2002, no pet.) (report must establish that expert is familiar with specific medical procedure that was subject of lawsuit); *Tomasi v. Liao*, 63 S.W.3d 62, 66 (Tex. App.—San Antonio 2001, no pet.) (report must "provide detailed information regarding the extent of this experience and whether this experience was relevant to . . . the specific issue before the court.").

Furthermore, although it is readily apparent from Dr. Page's curriculum vitae that she is a specialist in rehabilitative care, there is no indication in her resume that she has any experience in providing emergency care to her patients, other than a vague reference in her supplement to her interpretation of CT scans on an "emergent basis." The specific issue before the district court was the standard of care applicable to neurologists providing emergency care immediately following a

10

stroke, and the report failed to establish Dr. Page's qualifications in that regard. Therefore, we hold that the district court did not abuse its discretion in dismissing Ly's claim for failure to comply with section 13.01(r)(5).

We likewise conclude that the district court did not abuse its discretion in finding that Dr. Page's report failed to comply with section 13.01(r)(6). Among other things, Dr. Page does not explain the causal link between Dr. Austin's prescription of Heparin and Ly's increased pain, loss of cognitive ability, and worsened function, nor does it explain when Dr. Ellington should have ordered withholding of antihypertensive medication or whether, in fact, Ly's blood pressure dropped below the point where adequate cerebral perfusion was not possible.

Finally, we conclude that the district court did not abuse its discretion in granting Defendants' motion to dismiss and refusing to grant Ly a 30-day grace period. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g). "[A] section 13.01(g) grace period determination is reviewed under an abuse of discretion standard." *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003). "Section 13.01(g) requires a trial court to grant a grace period if, after hearing, 'the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake.'" *Id.* (quoting Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g)). Although some mistakes of law may negate a finding of intentional conduct or conscious indifference, entitling the claimant to a grace period under section 13.01(g), not every act of a defendant that could be characterized as a mistake of law is a sufficient excuse. *Id.* at 64. "In determining whether the failure to file adequate reports was due not to intentional disregard

11

or conscious indifference but to accident or mistake, we must look to the knowledge and acts of the claimant." *Id.*

"[A] party who files suit on claims subject to article 4590i is charged with knowledge of the statute and its requirements."[4] *Id.* In an affidavit filed with the district court in response to one of the motions to dismiss, Ly's former attorney stated that, "[a]t the time of filing of the expert reports and now," he believed that their content complied with "the applicable law regarding art. 4590i expert reports." The attorney further believed that Dr. Suzanne Page was qualified. However, the supreme court has held that a mere "belief" that a report complies with the statutory requirements does not establish a "sufficient excuse" necessary to support a finding that a party made a mistake of law, nor does it negate a finding of "intentional or conscious indifference." *Id.* at 64-65.

We note that by the time the district court heard Defendants' amended dismissal motion, it had previously granted Ly one extension under section 13.01(g), and had earlier delayed adjudicating other dispositive matters in the case due to Ly's difficulties in obtaining replacement counsel. Even before the district court granted him a 30-day extension, Ly had filed one amended report plus a supplement, but had not availed himself of the opportunity to further amend or supplement Dr. Page's reports to address Defendants' challenges to their adequacy.[5] We cannot

---

[4] The supreme court noted that "even a pro se litigant would be charged with knowledge of the statute and compliance with its requirements." *Walker v. Gutierrez*, 111 S.W.3d 56, 65 n.2 (Tex. 2003). We note this only because it appears from the record that Ly's first counsel withdrew at some point after the original expert report was filed, and that Ly was not represented by counsel when he filed his amended expert report. However, by the time the district court granted Ly a 30-day grace period, and throughout the remainder of the proceedings until this appeal, Ly was again represented by counsel.

[5] The extension appears to have served primarily to cure a timeliness problem with Dr. Page's supplement, which was not served until after the expiration of the 210th day after suit was filed.

conclude that the district court abused its discretion in finding that Ly's failure to comply with section 13.01 was intentional or the result of conscious indifference and in denying an additional grace period under section 13.01(g).

We overrule Ly's issues on appeal.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   July 13, 2007