Opinion issued April 7, 2005



     











In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00773-CV




LAWRENCE R. DAHLSTROM AND DOROTHY DAHLSTROM,
Appellants

V.

STEPHEN I. ESSES, M.D., DEPUY ACROMED, INC., AND JOHNSON &
JOHNSON, INC., Appellees




On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2002-07658




MEMORANDUM OPINION

          This is an appeal from a final judgment rendered after a dismissal pursuant to
the former Texas Medical Liability and Insurance Improvement Act.


 Appellants,
Lawrence R. Dahlstrom and Dorothy Dahlstrom (together referred to as “the
Dahlstroms”), filed suit against appellees, Stephen I. Esses, M.D. (“Dr. Esses”),
DePuy Acromed, Inc. and Johnson and Johnson, Inc.


 (together referred to as
“DePuy”), for injuries stemming from two surgeries on Lawrence Dahlstrom’s spine. 
Although they raise eleven issues, the Dahlstroms essentially present four arguments:
(1) the trial court erred in concluding that the Dahlstroms failed to submit a sufficient
expert report; (2) the trial court erred in denying a one-business-day extension to the
30-day grace period; (3) the trial court erred in denying the Dahlstroms’ motion for
continuance; and (4) the trial court erred in granting a no-evidence motion for
summary judgment in favor of DePuy. 
          We affirm.
Background
          On October 14, 1998, Dr. Esses performed spinal surgery on Lawrence
Dahlstrom. During the surgery, Dr. Esses used spinal instrumentation manufactured
by DePuy. Dr. Esses performed a second surgery on Lawrence Dahlstrom on
December 17, 1999. Because of recurring pain, the Dahlstroms filed suit against Dr.
Esses for medical malpractice and against DePuy for defective equipment on
February 13, 2002. 
          On August 12, 2002, the Dahlstroms filed a preliminary report of Aziz Razzuk,
M.D. On the same day, the Dahlstroms requested an additional 30 days, until
September 11, 2002, to amend Dr. Razzuk’s report. On October 11, 2002, Dr. Esses
moved to dismiss the Dahlstroms’ claims because they had not filed a sufficient
expert report. Three hearings were set on Dr. Esses motion to dismiss—October 28,
2002, November 11, 2002, and November 25, 2002. On November 22, 2002, the
Dahlstroms moved for a continuance of the November 25 hearing because their trial
counsel had a trial in another cause and because the Dahlstroms were in the process
of filing an amended report from Dr. Razzuk. The trial court granted the continuance
until January 6, 2003.
          The Dahlstroms filed Dr. Razzuk’s amended report on January 3, 2003. After
a hearing on January 6, 2003, the Dahlstroms filed a Corrected Supplemental
Response to Dr. Esses motion to dismiss on January 8. This response contained the
same amended report of Dr. Razzuk that had been filed on January 3. On January 15,
2003, the Dahlstroms filed a “Final Response” to Dr. Esses motion to dismiss. 
Within this response, the Dahlstroms requested a 30-day extension pursuant to former
article 4590i, section 13.01(g).


 Both parties contend that the trial court granted the
Dahlstroms’ motion for a 30-day grace period on January 20, 2003, although the
order is not reflected in the record. Thereafter, the parties signed a rule 11 agreement



in which the Dahlstroms agreed to file an expert report by February 28, 2003. On
February 28, the Dahlstroms filed a motion for a one-business-day extension in which
to file an expert report of a second expert, Dr. Walker. On March 3, 2003, the
Dahlstroms filed Dr. Walker’s expert report. On March 7, Dr. Esses objected to Dr.
Walker’s expert report on the grounds that it was untimely and inadequate. On March
24, 2003, without stating its reasons, the trial court dismissed the Dahlstroms’ claims
against Dr. Esses with prejudice. The Dahlstroms appeal from this order. 
          On April 23, 2003, the trial court granted Dr. Esses motion for summary
judgment. The trial court also granted DePuy’s motion for partial summary judgment
on limitations and its no-evidence motion for summary judgment on April 23, 2003.


 
We affirm.
Analysis
          In their first argument, the Dahlstroms argue that Dr. Razzuk’s expert reports
were sufficient under former article 4590i, section 13.01.


 The trial court’s dismissal
order does not state its grounds for dismissing the Dahlstroms’ suit. Thus, we can
affirm the trial court’s ruling on any reason stated in Dr. Esses motion to dismiss. In
his motion to dismiss, Dr. Esses argued that Dr. Razzuk’s expert report was deficient
because (1) Dr. Razzuk was not qualified to provide an expert report for this case and
(2) the report failed to set forth the standard of care. 
          We review a trial court’s dismissal under former article 4590i, section
13.01(r)(6) under an abuse of discretion standard. Am. Transitional Care Ctrs., Inc.
v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001). A timely expert report may be
challenged by motion to dismiss. See Act of May 1, 1995, 74th Leg., R.S., ch. 140,
§ 1, sec. 13.01(l), 1995 Tex. Gen. Laws 985, 987 (repealed 2003). The trial court
must grant the motion only if it appears to the court, after a hearing, that the report
does not represent a good-faith effort to comply with the statutory definition of an
expert report. See id.; Palacios, 46 S.W.3d at 877–78. In determining whether the
report represents a good-faith effort, the trial court’s inquiry is limited to the four
corners of the report. See Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, sec.
13.01(r)(6), 1995 Tex. Gen. Laws 985, 987 (repealed 2003); Palacios, 46 S.W.3d at
878.
Adequacy of Dr. Razzuk’s Qualifications
          Dr. Esses challenged Dr. Razzuk’s expert reports on the ground that Dr.
Razzuk was not qualified to render an expert opinion in this case. Former article
4590i, section 14.01 set out the requirements for an expert witness in a suit against
a physician:
[A] person may qualify as an expert witness on the issue of
whether the physician departed from accepted standards of
medical care only if the person is a physician who:
 
(1) is practicing medicine at the time such testimony is
given or was practicing medicine at the time the claim
arose;
 
(2) has knowledge of accepted standards of medical care
for the diagnosis, care, or treatment of the illness, injury, or
condition involved in the claim; and
 
(3) is qualified on the basis of training or experience to
offer an expert opinion regarding those accepted standards
of medical care.
 
See Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 2, sec. 14.01(a), 1995 Tex. Gen.
Laws 985, 988 (repealed 2003). In determining whether the expert is qualified on the
basis of training and experience, the court is to consider whether, at the time the claim
arose or the testimony is given, the witness is board certified or has other substantial
training or experience in an area of practice relevant to the claim and is actively
practicing medicine in rendering medical care services relevant to the claim. See Act
of May 1, 1995, 74th Leg., R.S., ch. 140, § 2, sec. 14.01(c), 1995 Tex. Gen. Laws
985, 988 (repealed 2003). Because of the increasing specialization of medicine,
“there is no validity, if there ever was, to the notion that every licensed medical
doctor should be automatically qualified to testify as an expert on every medical
question . . . . The proponent of the testimony has the burden to show that the expert
‘possesses special knowledge as to the very matter on which he proposes to give an
opinion.’” Broders v. Heise, 924 S.W.2d 148, 152–53 (Tex. 1996) (quoting 2 Ray,
Texas Law of Evidence: Civil & Criminal § 1401, at 32 (Texas Practice 3d ed.
1980)). Thus, the issue is the specific subject matter and the expert’s familiarity with
it. Broders, 924 S.W.2d at 153.
          The Dahlstroms filed two expert reports of Dr. Razzuk. Dr. Esses agrees that
both expert reports were properly before the trial court. We thus review both reports
to determine whether the trial court abused its discretion in finding that they were not
sufficient under former section 14.01. 
          The Dahlstroms argue that Dr. Razzuk was qualified to express an opinion
about the standard of care. Specifically, the Dahlstroms point out that 40% of Dr.
Razzuk’s patients are those with “orthopedic problems of all kinds, including those
with bulging or ruptured discs, and those with surgeries such as fusions.” However,
Dr. Razzuk’s expert reports state that only 40% had lower back injuries, while many
of the rest were neck injuries and a wide variety of orthopedic injuries. Contrary to
the Dahlstroms’ claims, Dr. Razzuk never states that he treated patients with fusions. 
He does state that a number of his patients have had surgery or eventually required
surgery. He also states that he saw patients who had had lumbar spinal surgery or
eventually required it, but nowhere in his reports does he state that he performed
surgery on his patients. Although he “performed and assisted on numerous
orthopedic surgeries during his surgical training,” Dr. Razzuk does not state what
type of orthopedic surgeries he performed or how his surgical training gave him
special knowledge to render an opinion in this case. 
          Dr. Razzuk is not an orthopedic doctor. He practiced medicine only between
1993 and 2000. He admits that his knowledge about pedicle screws comes from
readily available sources found on the Internet. He states that he completed two years
of surgical training and does not profess to be a surgeon. The parties do not disagree
that the surgery performed on Lawrence Dahlstrom was complex. Although Dr.
Razzuk saw and treated patients who have had orthopedic operations, Dr. Razzuk is
not an orthopedic doctor, let alone a surgeon, and he does not state that he has
familiarity with the specific surgery that was done in this case. 
          The proponent of the testimony has the burden to show that the expert
possesses special knowledge as to the very matter on which the expert proposes to
give an opinion. Broders, 924 S.W.2d at 152–53. Accordingly, we cannot conclude
that the trial court abused its discretion in finding that Dr. Razzuk was not qualified
to testify as an expert. See Forrest v. Danielson, 77 S.W.3d 842, 847–48 (Tex.
App.—Tyler 2002, no pet.) (holding that doctor not qualified to give expert opinion
because nothing in expert report or curriculum vitae established that he was familiar
with procedure to remove disc protrusion and install pedicle screw and rod system). 
Because we conclude that the trial court did not abuse its discretion in concluding that
Dr. Razzuk was not qualified to render an expert opinion in this case, we need not
consider whether the expert report properly detailed the proper standard of care.
          We overrule the Dahlstroms’ first argument.
Failure to grant a one-business-day extension
          In their second argument, the Dahlstroms contend that the trial court abused its
discretion when it denied their request for a one-business-day extension. The
Dahlstroms admit that they agreed to file an additional expert report by February 28,
2003. On February 28, 2003, the Dahlstroms requested an extension for one business
day to file their expert report. In their request for an extension, the Dahlstroms
argued that an “Act of God” had prevented them from making their appointment with
Dr. Walker. Although the Dahlstroms did not file Dr. Walker’s expert report on
February 28, they filed it on March 3, the next business day. Dr. Esses objected to
the timeliness and adequacy of the late-filed expert report, and the trial court
dismissed the suit on March 24, 2003. 
          On appeal, the Dahlstroms contend that their motion for a one-business-day
extension was enough to show good cause necessary to grant the extension. The
Dahlstroms also argue that the trial court abused its discretion because former section
13.01(g) does not state that “the trial court cannot grant one business day more if
there is an unexpected act of God.” 
          We note that the record does not reflect that the trial court ever ruled on the
Dahlstroms’ motion for extension. To properly preserve their complaint for appellate
review, the Dahlstroms were required to get a ruling on their motion or to object to
the trial court’s failure to rule. See Tex. R. App. P. 33.1(a)(2)(A), (B); see also Green
v. Indus. Specialty Contractors, Inc., 1 S.W.3d 126, 130 (Tex. App.—Houston [1st
Dist.] 1999, no pet.). The Dahlstroms did neither and, therefore, have failed to
preserve this complaint for appellate review. 
          Even if the Dahlstroms’ complaint had been preserved, we would conclude that
they have not shown that the trial court abused its discretion. The parties agree that
the trial court granted the Dahlstroms a 30-day grace period in which to file an
additional expert report. Pursuant to a rule 11 agreement, the Dahlstroms agreed to
file their expert report on February 28, 2003—a deadline that actually gave the
Dahlstroms more time than the requisite 30 days. The Dahlstroms missed their
agreed deadline, and the trial court dismissed the Dahlstroms’ claims. A trial court
does not abuse its discretion in dismissing a suit when the plaintiff fails to file an
expert report within the section 13.01(g) grace period. See Act of May 1, 1995, 74th
Leg., R.S., ch. 140, § 1, sec. 13.01(e)(3), 1995 Tex. Gen. Laws 985, 986 (repealed
2003); Hart v. Wright, 16 S.W.3d 872, 876 (Tex. App.—Fort Worth 2000, pet.
denied). 
          Because the Dahlstroms failed to file an expert report within the 30-day grace
period, we conclude that the trial court did not abuse its discretion in dismissing the
suit with prejudice. Because we conclude that the trial court did not abuse its
discretion, we need not consider the adequacy of Dr. Walker’s expert report.
          We overrule the Dahlstroms’ second argument.
Motion for Continuance
          In their third argument, the Dahlstroms argue that the trial court abused its
discretion by denying their motion for continuance. The Dahlstroms contend that
they needed a continuance to pursue additional discovery in order to respond to
DePuy’s motions for summary judgment. 
          The record reflects that the Dahlstroms filed suit on February 13, 2002. On
July 1, 2002, the trial court granted a joint motion to amend the docket control order. 
Pursuant to a joint rule 11 agreement signed July 18, 2002, the parties agreed to file
motions for summary judgment by March 14, 2003 and to begin trial on May 12,
2003. DePuy filed its motion for partial summary judgment on limitations and its no-evidence motion for summary judgment on February 17, 2003. These motions were
set for submission on March 10, 2003. On March 7, 2003, the Dahlstroms filed their
motion for continuance of the submission or hearing on the motions. In their motion,
the Dahlstroms requested that the hearing be postponed until April 9, 2003. The
motion for continuance specifically stated that the depositions of Dr. Esses and a
DePuy representative with knowledge about the design, manufacture, and sale of the
instrumentation used in this case were in the process of being arranged and taken. On
April 23, 2003, the trial court signed two separate orders that granted each of DePuy’s
motions for summary judgment.
          Although the Dahlstroms filed a motion for continuance, they neither requested
a hearing on the matter nor obtained a ruling from the trial court. A party moving for
a continuance of a summary judgment hearing must obtain a written ruling on its
motion to preserve a complaint for appellate review. See Tex. R. App. P. 33.1;
Washington v. Tyler Indep. Sch. Dist., 932 S.W.2d 686, 690 (Tex. App.—Tyler 1996,
no writ); see also Rangel v. State Bar of Tex., 898 S.W.2d 1, 3 (Tex. App.—San
Antonio 1995, no writ). Because the Dahlstroms never obtained a ruling on their
motion for continuance, the Dahlstroms waived any error relating to the trial court’s
failure to continue the summary judgment hearing. 
          Notwithstanding the fact that this complaint has not been preserved, the trial
court, in effect, granted the motion for continuance because it did not rule on DePuy’s
motions for summary judgment until April 23, 2003, which was 14 days beyond the
extension requested by the Dahlstroms. In effect, the trial court gave the Dahlstroms
nearly 45 additional days to conduct discovery. At the time that the trial court
granted the motions for summary judgment, the Dahlstroms’ case had been on file for
over 14 months. We conclude that the trial court did not abuse its discretion.
          We overrule the Dahlstroms’ third argument.
Summary Judgment Motions
          In their fourth argument, the Dahlstroms contend that the trial court erred in
granting DePuy’s no-evidence motion because, in actuality, it was a traditional
motion for summary judgment pursuant to rule 166a(b). See Tex. R. Civ. P. 166a(b). 
The Dahlstroms contend that because DePuy attached deposition testimony and other
documents to its no-evidence motion for summary judgment, DePuy converted it into
a traditional motion for summary judgment. 
          The record reflects that DePuy filed both a no-evidence motion for summary
judgment and a motion for partial summary judgment on limitations. The motion for
partial summary judgment on limitations includes deposition transcripts. The no-evidence motion does not contain deposition testimony or any other documents. 
Accordingly, the Dahlstroms’ complaint is without merit. 
          We overrule the Dahlstroms’ fourth argument.
 
 
 
Conclusion
We affirm the judgment of the trial court.
 

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Hanks.