Opinion issued September 30, 2010

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00167-CV

———————————

MARK M. METTAUER, M.D., Appellant

 

V.

 

HELEN NOBLE, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX
OF THE ESTATE OF ANTHONY M. NOBLE, DECEASED, ALEXANDRIA NOBLE BARCAK, SASHA
NOBLE, DANIELLE HELLER, AND VANESSA 
NOBLE, Appellees



 



 

On
Appeal from the 234th District Court

Harris County, Texas



Trial Court Case No. 2009-46224

 



 

O P I N I O N

In this interlocutory appeal,[1]
appellant, Mark M. Mettauer, M.D., challenges the trial court’s order denying
his motion to dismiss the health care liability claim[2] of
appellees, Helen Noble, individually and as independent executrix of the estate
of Anthony M. Noble, deceased, Alexandria Noble Barcak, Sasha Noble, Danielle
Heller, and Vanessa Noble (collectively, the “Nobles”).  In two issues, Dr. Mettauer contends that the
trial court erred in finding that the Nobles’ expert report, written by Dr.
Joseph Carey, is sufficient, determining that Dr. Carey is a qualified expert,[3]
and not dismissing the claim.  The Nobles
contend that Dr. Mettauer has brought this appeal “only to delay the trial and
increase the cost” of the case, and they seek sanctions for his bringing of a
frivolous appeal.[4]

We affirm.

Background 

In their
original petition, the Nobles, asserting a health care liability claim against Dr.
Mettauer, allege that he, while conducting a thoracoscopic atrial ablation on the
decedent, and unable to visualize a catheter, negligently continued with the
procedure and “tore a hole in the right atrial-inferior vena-cava junction of
the [decedent’s] heart.”  Dr. Mettauer
then, instead of a “medial sternotomy incision,” performed a “right
posterolateral thoracotomy to open the [decedent’s] chest and repair the injury,”
causing an “extensive period of time before blood flow could be reestablished
to [the decedent’s] body and organs.”  The
lack of blood flow caused “catastrophic multiple organ failure,” which resulted
in death.

The Nobles
timely served Dr. Mettauer with the expert report of Dr. Joseph S. Carey, who
opined that the standard of care for thoracoscopic surgery generally requires a
surgeon to “visualize through the camera the catheter used during the
procedure” and Dr. Mettauer deviated from the standard of care by continuing 
“with the thoracoscopic ablation procedure when he could not visualize the blue
catheter.”  The deviation “in reasonable
medical probability resulted in the injury to the [decedent’s] inferior vena
cava right atrial junction.”  Dr. Carey
further opined that after the injury, the standard of care called for Dr.
Mettauer “to immediately convert the procedure from a thoracoscopic procedure
to an open procedure,” which requires a surgeon “to open the chest using a
median sternotomy incision, which allows more direct visualization of the heart
and the injury.”  Dr. Mettauer deviated
from the standard of care when he converted to a “right posterolateral
thoracotomy” because such a procedure “takes longer” and “does not allow full
visualization” of the heart.  Use of the
procedure caused the decedent to be “without blood supply to his vital organs
for a critical period of time,” rather than the “few minutes” that would have
passed had Dr. Mettauer used the open procedure.  This delay, “in reasonable medical
probability,” caused the decedent’s “catastrophic multiple organ failure that
resulted in his death.”

Dr.
Mettauer objected to Dr. Carey’s report on the ground that Dr. Carey “does not
perform the thora[co]scopic cardiac ablation procedure at issue,” making him
unqualified to opine on the standard of care for the procedure.  Dr. Carey’s conclusions that the “right posterolateral
thoracotomy unnecessarily caused the decedent to go without blood supply” and
that this ultimately caused his death were based on “assumptions and/or
mistakes,” not the decedent’s medical records. 
Also, Dr. Carey’s “proximate cause conclusion” did not “provide
necessary underlying facts regarding the alleged causal relationship” between
the “right posterolateral thoracotomy and Mr. Noble’s death.”

In response
to Dr. Mettauer’s objections, the Nobles timely served upon him Dr. Carey’s
amended expert report in which he stated that he had reviewed the decedent’s
records from St. Luke’s Hospitals in the Woodlands and Houston, Dr. Mettauer,
and Dr. Frank D. Reichmann.  Dr. Carey clarified
that he had performed “many thoracoscopic surgical procedures” but had only
“performed the atrial ablation procedure with the open technique.”  He opined that the standard of care for
thoracoscopic surgery is the same for “an ablation as for other cardiovascular
surgery.”  Dr. Carey clarified that the
decedent had been subjected to a “period of 13 minutes between the onset of the
bleeding and the opening of the chest” and that blood flow, in reasonable
probability, could have been “re-established within 2-3 minutes” had Dr.
Mettauer used the “open procedure” to open the decedent’s chest.  He opined that “had the blood flow been
re-established within such time, [the decedent] would not, in reasonable
medical probability, have suffered the catastrophic multiple organ failure that
resulted in his death.”

Dr.
Mettauer lodged the same three objections that he had made against Dr. Carey’s
original report and asserted his “[section] 74.351”[5]
motion to dismiss the Nobles’ health care liability claim.  Dr. Mettauer claimed that Dr. Carey’s (1)
proximate cause opinion depended upon a loss of blood supply that did not occur
based on the medical records that established that “Mr. Noble never lost blood
pressure and thus never lost blood supply”; (2) thoracoscopic standard of care
opinion is based upon “his lack of experience with the surgery at issue”; and
(3) atrial proximate cause opinion is based upon “an assumption that is not
supported by the medical records (or by the discovery),” which shows that “the
Flex View special camera adaptor” created the injury and not an “unsupervised
blue catheter.”  Dr. Mettauer asserted
that “Dr. Carey’s amended expert report cannot be sufficient if the operative
facts within it are wrong or if the critical opinions within it are
conclusory.”  He asked the trial court to
consider “whether [the decedent’s] medical records and the discovery . . . show
that the operative facts” within Dr. Carey’s expert report “are wrong” and that
his opinions are conclusory.  Dr.
Mettauer attached to his motion the decedent’s “anesthesia record” from St.
Luke’s Hospital in the Woodlands, the “report of procedure” from St. Luke’s
Hospital in Houston, a PowerPoint presentation allegedly showing how to use the
“Guidant Flex 10 Microwave Surgical Ablation System” used during the ablation,
and his own answers to interrogatories (collectively, the “source material”).  Dr. Mettauer also filed motions to stay
discovery and for continuance while his interlocutory appeal of the trial
court’s order is pending.

In their
response to Dr. Mettauer’s objections, the Nobles asserted that Dr. Mettauer
was asking the trial court to “consider extraneous evidence as to whether the
opinion in the report” was accurate instead of looking “only within the four
corners” of the report to determine its sufficiency.  They countered that Dr. Carey could “rely on
matters not in the medical records to support his opinions” and “the minutes of
delay resulting from using a posterolateral technique” caused the multiple
organ failure that ultimately killed Mr. Noble. 
The report outlined the standard of care and “inform[ed] [Dr. Mettauer]
of the specific conduct called into question, how [the standard of care] was
breached, and how that breach caused Mr. Noble’s injuries.” 

In their
response to Dr. Mettauer’s motion to dismiss, the Nobles asserted that his attached
source material is “extrinsic evidence which cannot be considered in
determining whether an expert report is adequate.”  The Nobles labeled Dr. Mettauer’s motion a
“motion for summary judgment” because he sought to use evidence from the
medical records and discovery to “prove Dr. Carey’s opinions are wrong” instead
of challenging whether Dr. Carey’s “report meets the criteria for an expert
report.”[6]
 Additionally, they asserted that Dr.
Mettauer’s motion was based on his attorneys’ “interpretation of what [the
anesthesia report] means,” not any “expert testimony,” and the “medical
literature” relied upon had not been “established as authoritative by any
expert.”

Standard of Review

We review a trial court’s decision on
a motion to dismiss a health care liability claim for an abuse of discretion.  See Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 875 (Tex. 2001) (predecessor statute); Gray v. CHCA Bayshore L.P., 189 S.W.3d
855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  A trial court abuses its discretion if it acts
in an arbitrary or unreasonable manner without reference to guiding rules or
principles.  See Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999).  When reviewing matters committed to the trial
court’s discretion, we may not substitute our own judgment for that of the
trial court.  Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).  A trial court does not abuse its discretion
merely because it decides a discretionary matter differently than an appellate
court would in a similar circumstance.  Gray, 189 S.W.3d at 858; Harris County Hosp. Dist. v. Garrett,
232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Expert Report

In two issues, Dr. Mettauer argues
that the trial court erred in denying his motion to dismiss the Nobles’ health care
liability claim because “not requiring the facts affecting the standard of
care, breach, proximate cause, and damages in the expert report to be reliable
permits impermissibly absurd results,” Dr. Carey was not qualified to opine on
the standard of care applicable to a thoracoscopic atrial ablation procedure,
and the trial court “should have taken notice of Dr. Mettauer’s source
material” in determining the sufficiency of Dr. Carey’s expert report and
qualifications.

Sufficiency of Expert Report

A plaintiff bringing a health care
liability claim must provide each defendant health care provider with an expert
report.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351 (Vernon Supp. 2010); Gray, 189 S.W.3d at 858.  The
expert report must provide a fair summary of the expert’s opinions as of the
date of the report regarding the applicable standards of care, the manner in
which the care rendered by the health care provider failed to meet the
standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).  

If a defendant files a motion to
dismiss challenging the adequacy of the expert report, the trial court shall
grant the motion to dismiss only if it appears to the court, after a hearing,
that the report does not represent an objective good-faith effort to comply
with the definition of an expert report.  Id. §
74.351(b), (l).  The only information
relevant to the inquiry is that within the four corners of the document.  Palacios,
46 S.W.3d at 878.  Although the plaintiff
need not marshal all of her proof in the report, the report must include the
expert’s opinion on each of the elements identified in the statute.  See
Palacios, 46 S.W.3d at 878–79; Gray,
189 S.W.3d at 859.  In setting out the
expert’s opinions, the report must provide enough information to fulfill two
purposes to constitute a good-faith effort.  Palacios,
46 S.W.3d at 879.  First, the report must
inform the defendant of the specific conduct the plaintiff has called into
question.  Id.  Second, the report must
provide a basis for the trial court to conclude that the claim has merit.  Id.  A report that merely states the expert’s
conclusions does not fulfill these two purposes.  Id.  The expert must explain the basis of his
statements to link his conclusions to the facts.  Bowie,
79 S.W.3d at 52.  However, a plaintiff
need not present evidence in the report as if she were actually litigating the
merits.  Palacios, 46 S.W.3d at 879.  Furthermore,
the report may be informal in that the information in the report does not have
to meet the same requirements as the evidence offered in a summary judgment
proceeding or trial.  Id.

Dr. Mettauer argues that because Dr.
Carey’s report is “counterfactual” and “factfree,” the trial court should have considered
Dr. Mettauer’s “source material contradicting the facts affecting standard of
care, breach, proximate cause, and damages,” which the Nobles “failed to reasonably
question.”  Dr. Mettauer asks this Court
to hold that “when checking the specific medical facts cited by the expert,” a
trial court should be allowed to “look in the medical records cited by the
expert” rather than restrict its review to the four corners of the expert
report and curriculum vitae in determining the sufficiency of the expert
report.  He asserts that the trial court
was required to take judicial notice of “specific medical facts affecting
standard of care, breach, proximate cause, and/or damages” that he supplied
with his source material.

In support of his argument, Dr.
Mettauer relies on Baptist Hospitals of
Southeast Texas v. Carter, No. 09-08-00067-CV, 2008 WL 2917109, at *3 (Tex.
App.—Beaumont July 31, 2008, no pet.) (mem. op).  In Carter,
the plaintiff contended that the absence of an operative report from his first
surgery impeded diagnosis and delayed proper corrective surgery.  Id.  The defendant-hospital introduced two
“operative reports,” which had been reviewed by the expert in writing his
report, to support its objection that the expert’s report “inadequately
explained how the alleged delays in [the plaintiff’s] treatment were
attributable to the absence of a report on the first surgery.”  Id.
at *3.  The court of appeals stated,
“While a court cannot go outside the expert’s report in order to supply
information that is statutorily required to be within it, the challenge in this
case addresses whether the opinions in the expert’s report are supported by the
facts reflected in the medical records the expert has relied upon to render a
report.”  Id. at *3 n.4.  The court
went on to consider in its sufficiency analysis the two records presented by
the defendant-hospital for the trial court’s review, and the court concluded
that the expert report based “its causation analysis on several assumptions
about [the plaintiff’s] treatment at [the defendant-hospitals] that are
inconsistent with the medical records placed in evidence.”  Id.
at *5.  The court further concluded that
the operative report from the second surgery referred to the first surgery and
adequately made the surgeon aware of the complications from the first
surgery.  Id. at *6.  The court held
that the expert report did not “sufficiently explain how not having a report on
the first surgery delayed [the plaintiff’s] treatment and resulted in his
injury” and, thus, was conclusory.  Id.

The Nobles assert that any review of the
source material, which is outside the four corners of Dr. Carey’s report,
violates the “four corners” rule of Palacios.  46 S.W.3d at 878.  We agree. 
First, Dr. Mettauer, unlike the plaintiff in Carter, does not assert that Dr. Carey relied on the source
material in writing his expert report.  A
court of appeals may not engage in a review of documents not relied upon by an
expert. Christus Health Se. Tex. v.
Broussard, 306 S.W.3d 934, 939 (Tex. App.—Beaumont 2010, no pet.) (“Because
[the] defendants’ motion asked the trial court to look beyond the four corners
of the report and determine fact issues based on an affidavit and documents not
reviewed or relied on by the expert, the trial court did not abuse its
discretion in denying the motion to dismiss”); see also In re Windisch,
138 S.W.3d 507, 511 (Tex. App.—Amarillo 2004, no pet.) (per curiam) (refusing
to consider record of hearing and expert’s testimony in considering adequacy of
expert report).[7]  

Second, in the context of a health care
liability claim, the trial court’s role is not to determine the truth or
falsity of the expert’s opinion but to act as a gatekeeper.  Pedroza
v. Toscano, 293 S.W.3d 665, 667 (Tex. App.—San Antonio 2009, no pet.); Schmidt v. Dubose, 259 S.W.3d 213, 218
(Tex. App.—Beaumont 2008, no pet.); see
also E.I. du Pont de Nemours & Co.,
Inc. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995).  Here, the trial court was specifically
restricted to determining whether Dr. Carey’s expert report “represent[ed] a
good-faith effort to comply with the definition of an expert report,” that is,
whether it informed Dr. Mettauer of the specific conduct called into question, provided
a basis for the trial court to conclude that the Nobles’ claim has merit, and explained
the basis of Dr. Carey’s statements to link his conclusions to the facts.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(b), (l); Bowie, 79 S.W.3d at
52; Palacios, 46 S.W.3d at 878.  

Third, the Beaumont Court of Appeals
has, since it issued its opinion in Carter,
issued a recent opinion clarifying that a challenge to the sufficiency of an
expert report is limited to the four corners of the expert report.  Broussard,
306 S.W.3d at 939.  In Broussard, the court held that, despite
inconsistencies between assertions made in a plaintiff’s expert report and
those made in a defendant’s motion to dismiss, a trial court may not look
beyond the four corners of the expert report to determine whether the facts
asserted in the report are false.  Id. (“Because defendants’ motion asked
the trial court to look beyond the four corners of the report and determine
fact issues based on an affidavit and documents not reviewed or relied on by
the expert, the trial court did not abuse its discretion in denying the motion
to dismiss.”).  The court in Broussard clearly noted that extraneous
information, which was not relied upon by an expert in making his
determinations and which does not appear in the report, may not be reviewed in
determining the sufficiency of an expert report.  Id. 

Finally, we find no support in Texas
Supreme Court authority that the trial court’s review of the sufficiency of an
expert report may include documents outside the four corners of the expert
report and the expert’s curriculum vitae. 
Accordingly, we conclude that the trial court did not err in declining
to review Dr. Mettauer’s source material in its review of Dr. Carey’s expert
report.

We review the sufficiency of Dr.
Carey’s report looking at the four corners of the report.  See
Palacios, 46 S.W.3d at 878.  Dr. Carey explained that the standard of care
required Dr. Mettauer to stop the thoracoscopic atrial ablation when he could
not “visualize the blue catheter” and to convert to a “medial
sternotomy incision” to
open the decedent’s chest after the injury. 
Dr. Carey identified the specific acts of Dr. Mettauer that were
negligent: continuing the procedure when he could not visualize the catheter,
resulting in the tear in the artery, and converting to a
posterolateral thoracotomy to open the chest. 
The report put Dr. Mettauer on notice that his use of the posterolateral
thoracotomy, instead of the “open procedure,” delayed restoration of the blood
supply to multiple organs, which subsequently failed and caused Mr. Noble’s
death.  Accordingly, we hold that the
trial court did not err in finding Dr. Carey’s expert report sufficient.

Dr. Carey’s Qualifications

In regard to an “expert report” in a
health care liability claim, an “expert,” “giving opinion testimony about the
causal relationship between [an] injury, harm, or damages claimed and [an]
alleged departure from the applicable standard of care,” must be “a physician
who is otherwise qualified to render opinions on such causal relationship under
the Texas Rules of Evidence.”  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(r)(5)(C).  Under the Texas Rules
of Evidence, “[i]f scientific, technical, or other specialized knowledge will
assist the trier of fact to understand the evidence or to determine a fact in
issue, a witness qualified as an expert by knowledge, skill, experience,
training, or education may testify thereto in the form of an opinion or
otherwise.”  Tex. R. Evid. 702; see
also Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996).

In regard to the qualifications of an
expert witness on causation in a health care liability claim against a
physician, the expert witness must be a physician and “otherwise qualified to
render opinions on [causation] under the Texas Rules of Evidence.”  Tex.
Civ. Prac. & Rem. Code Ann. § 74.403(a) (Vernon 2005).  On the issue of whether a physician departed
from accepted standards of medical care, a person may qualify as an expert
witness only if the person is a physician who:

(1)       is practicing medicine at the time such testimony is
given or was practicing medicine at the time the claim arose; 

(2)       has knowledge of accepted standards of medical care
for the diagnosis, care, or treatment of the illness, injury, or condition
involved in the claim; and 

(3)       is qualified on the basis of training or experience to
offer an expert opinion regarding those accepted standards of medical care. 

Id. §
74.401(a) (Vernon 2005).  If a witness is
to be qualified on the basis of training or experience, “the court shall
consider whether, at the time the claim arose or at the time the testimony is
given, the witness . . . (1) is board certified . . . and . . . is actively
practicing medicine in rendering medical care services relevant to the claim.”  Id.
§ 74.401(c).  An expert report by a
person not qualified to testify does not represent a good-faith effort to
comply with the definition of an expert report. 
Foster v. Zavala, 214 S.W.3d
106, 116 (Tex. App.—Eastland 2006, pet. denied) (citing In re Windisch, 138 S.W.3d at 511 (interpreting predecessor statute
to section 74.351)).[8]

Dr. Mettauer first asks this Court to
look outside the four corners of the expert report and curriculum vitae and
rely on his source materials to conclude that Dr. Carey is unqualified to opine
on the issue of standard of care.  Again,
however, our analysis of the qualifications of an expert is limited to the
“four corners of the expert’s report and curriculum vitae.”  Mem’l
Hermann Healthcare Sys. v. Burrell, 230 S.W.3d 755, 758 (Tex. App.—Houston
[14th Dist.] 2007, no pet.).  Thus, the
source material is not relevant to a qualifications inquiry.  Instead, the analysis is confined to Dr.
Carey’s expert report and curriculum vitae. 
Id.

Dr. Mettauer next argues that because
Dr. Carey has “no experience with the thoracoscopic atrial ablation surgery,” his
opinion that “the standard of care regarding thoracoscopic surgery as it
relates to the [decedent] is the same whether the thoracic surgeon is
performing an ablation or other cardiovascular surgery using the thoracoscopic
technique” is conclusory.  He asserts
that the Nobles failed to challenge his source material, specifically the
PowerPoint presentation, as “unreliable” and the presentation shows that Dr.
Carey is not qualified to give an opinion about the thoracoscopic cardiac
ablation procedure.

However, as
identified in his expert report, Dr. Carey’s credentials include board
certifications in surgery and thoracic surgery and private practice for
twenty-seven years as a cardiovascular and thoracic surgeon, the area of
medicine relevant to the Nobles’ claim.  He
is “very familiar with general thoracoscopic surgical techniques.”  In his practice, he routinely performs
thoracic surgical procedures that involve a thoracoscope, but he has never
performed the cardiac ablation procedure using the thoracoscopic technique,
which is the procedure at issue.  

Dr.
Mettauer next asserts that Dr. Carey had to have “familiarity with the medical
procedure at issue” to be qualified.  See Forrest
v. Danielson, 77 S.W.3d 842, 848 (Tex. App.—Tyler 2002, no pet.).  In Forrest,
the expert, whom the court found was not qualified, was board certified in
orthopedic surgery, which deals with injuries to the skeletal system.  Id.  However, his expert report and curriculum
vitae did not indicate that he was familiar with the procedures that the
defendant-doctor had used to access the plaintiff’s spine or to remove the disc
protrusion or the treatment of a disc protrusion.  Id.  Here, in contrast, Dr. Carey, while not
having performed an atrial ablation using the thoracoscopic procedure, has in
fact performed numerous atrial ablations using the “open procedure,” and he routinely
performs thoracoscopic cardiothoracic procedures.  He is also a board certified thoracic surgeon
who is currently practicing.  

The facts presented
here are more similar to those in Moore
v. Gatica, 269 S.W.3d 134, 141–42 (Tex. App.—Fort Worth 2008, pet.
denied).  In Moore, an expert
was board certified in thoracic surgery and had a practice covering “all
aspects” of general, thoracic, and cardiovascular surgery.  Id.
at 142.  Though the expert report did not
indicate that he had experience performing the “laparoscopic appendectomy” at
issue, the court concluded that he was qualified to offer an opinion on the
standard of care for the treatment of appendicitis because his practice “solely
focused on surgery” and he cared “for patients with appendicitis.”  Id.
at 141–42.  Like the expert in Moore, Dr. Carey has an extensive background in cardiothoracic surgery
that includes the routine use of thoracoscopes, and he has experience
performing atrial ablations.  Thus, he
had knowledge of the accepted standards of care for a thoracoscopic atrial
ablation.  Accordingly, we hold that the
trial court did not err in finding that Dr. Carey is a qualified expert on the
issue of the standard of care.

Having held
that the trial court did not err in finding that Dr. Carey is a qualified
expert on the issue of the standard of care and that his report is sufficient,
we overrule Dr. Mettauer’s two issues. 

Sanctions

The Nobles argue
that we should assess sanctions against Dr. Mettauer for bringing a frivolous
appeal because “no case law supports [his] reliance upon extraneous evidence to
attack the adequacy of [Dr. Carey’s] report,” he failed to “expend the effort
to authenticate the information he relied upon” or to provide expert testimony
in support of his assertions, and Dr. Mettauer brought this appeal “only to
delay the trial and to increase the cost.”

After
considering the record, briefs, or other papers filed in this Court, we may
award a prevailing party just damages if we objectively determine that an
appeal is frivolous.  Tex. R. App. P. 45; Smith v. Brown, 51 S.W.3d 376, 381 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied). 
An appeal is frivolous when the record, viewed from the perspective of
the advocate, does not provide reasonable grounds for the advocate to believe
that the case could be reversed.  Smith, 51 S.W.3d at 381.  The decision to grant appellate sanctions is a
matter of discretion that an appellate court exercises with prudence and
caution and only after careful deliberation.  Id.  

In his
appeal, Dr. Mettauer has, contrary to the overwhelming weight of authority, asked
us to look outside the four corners of the expert report and to consider his
“source material” in evaluating Dr. Carey’s qualifications and expert report.  Also, Dr. Mettauer’s reliance on Carter is misplaced, and he did fail to
bring the Beaumont Court of Appeals’ more recent opinion in Broussard to our attention.  However, his argument is based on the
reasoning expressed in Carter, and Broussard was not issued until the day
before Dr. Mettauer filed his notice of appeal. 
Exercising prudence and caution, we decline to assess sanctions under
these circumstances. 

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

                                                                             Terry
Jennings

                                                                             Justice

 

Panel consists of Justices Jennings, Alcala,
and Sharp.











[1]           See
Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(9) (Vernon 2008). 

 





[2]           See
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351 (Vernon Supp. 2010).

 





[3]           See
id. 

 





[4]           See Tex.
R. App. P. 45.





[5]           See
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351.





[6]           See
id. § 74.351.





[7]           See
also Hamilton v. Durgin, No.
10-08-00146-CV, 2008 WL 4816624, at *1 (Tex. App.—Waco Nov. 5, 2008, no pet.)
(mem. op.) (holding that defendants attempted to argue merits of claim by
asking court to review documents and information outside the expert reports in
determining the sufficiency of the reports).





[8]           See
also CHCA Mainland, L.P. v. Dickie,
No. 14-07-00831-CV, 2008 WL 3931870, at *3 (Tex. App.—Houston [14th Dist.] Aug.
21, 2008, no pet.) (mem. op.).